2016 PA Super 257

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TERRILL JAVON HICKS, | |
| Appellant | No. 1742 WDA 2015 |

Appeal from the Judgment of Sentence October 23, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006205-2007

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and STRASSBURGER,[*] JJ.

OPINION BY SHOGAN, J.:                    **FILED NOVEMBER 18, 2016**

Appellant, Terrill Javon Hicks, appeals from the judgment of sentence entered on October 23, 2015, in the Allegheny County Court of Common Pleas.  After careful review, we vacate and remand with instructions.

The trial court provided the following factual background in this matter:

> The testimony in this case is summarized as follows. Kendall Dorsey testified that on December 23, 2006, while sitting on the front porch with his friend Kevin Harrison, he saw Appellant shooting at him and at Harrison. (Transcript of Jury Trial April 27-May 3, 2010, hereinafter TT[, at] 108-9)  Dorsey saw co-Defendant Raymont Walker standing with Appellant. (TT 109)  Dorsey scurried into the house and avoided injury, but Harrison was shot and killed. (TT 109-10)
>
> Dorsey testified that a few days earlier he was at his friend John McDonald's house. (TT 97)  He heard a knock on the door.

---

[*]  Retired Senior Judge assigned to the Superior Court.

Another friend, Michael Harris, answered the door. Immediately, Appellant attempted to pull Harris out of the house, but the attempt was unsuccessful as Harris was able to close the door. (TT 98) Dorsey testified that he went upstairs, looked out a window and observed Appellant and Walker in the street holding pistols. *Ibid.*

The following day, the day before the shooting, Dorsey testified that he had an encounter in the neighborhood with Appellant. Appellant said that he had been robbed, and that he thought that Dorsey, Harris and Harrison did it. (TT 100) Dorsey denied robbing Appellant. *Ibid.*

The next day, the day of the murder, Dorsey testified that Appellant and Walker drove up to Dorsey and Harrison while they were walking a dog. Appellant and Walker exited the car, and Walker said, "Where is Mike Harris at?" (TT 102) Dorsey observed that both Appellant and Walker had weapons. (TT 103) Dorsey and Harrison lied, denying that they knew Harris' location, and eventually Appellant and Walker got back in their car, a white Chevrolet Impala, and left. (TT 104)

After that incident, Dorsey testified that he and Harrison immediately returned to Harrison's house, where they knew Harris was. *Ibid.* Dorsey noticed a white Chevrolet Impala circling the house, the same car in which he had just seen Appellant and Walker. *Ibid.* He safely entered the residence but eventually went outside to the front porch with Harrison to smoke a cigarette. (TT 105-6) Dorsey told Harris not to join them on the porch because Appellant and Walker were looking for him. (TT 106) Appellant and Walker approached the house. Appellant fired approximately ten shots, killing Kevin Harrison.

John McDonald corroborated Dorsey's testimony regarding the incident at his house. McDonald said that he encountered Appellant at a gas station the day before Appellant came to his house. McDonald said Appellant was upset because he had been robbed. (TT 192) Appellant told McDonald he did not know who had robbed him. *Ibid.*

McDonald said that, on the following day, Appellant came to his house and attempted to forcibly remove Harris from McDonald's home when Harris answered the door. (TT 190) The day after, Appellant and Walker came to his house again. (TT

191)  By that point, Appellant had become convinced that Harris, Harrison and a third individual nicknamed "Dee" had robbed him. (TT 192-3)  Appellant told McDonald that he was looking for the people that he thought had robbed him, and if Appellant found them, either they would get hurt or someone would die. (TT 196)  Walker added that what the robbers had done "wasn't cool" and that he "was going to ride with Appellant," his best friend. (TT 199)  McDonald, an army sergeant with eight years of military experience, observed that Appellant was carrying a gun which he recognized as a "Glock 45." (TT 196)

Michael Harris testified that he was inside Harrison's house on the couch in the front living room when the shots were fired. (TT 240)  He heard the shots hit the house, so he moved to the floor and exited toward the rear of the house.  He also reiterated that Appellant had attempted to pull him out of McDonald's residence on the day before the shooting. (TT 239)

John Betarie, a Homestead police officer, testified that he recovered six shell casings at the scene of the shooting in the location where Dorsey said Appellant was standing, and three additional projectiles on the kitchen floor. (TT 86)  These shell casings were sent to the crime lab for analysis.  *Ibid.*  Dr. Robert Levine, a forensics expert at the crime lab, testified that the 45 caliber casings found at the scene were all fired from the same weapon. (TT 347)

Dr. Abdulrezak Shakir, a forensic pathologist with the Allegheny County Medical Examiner's Office, conducted the autopsy of Kevin Harrison. (TT 357-8)  Dr. Shakir stated that Harrison was shot three times. (TT 358)  He concluded that Harrison died as a result of a gunshot wound to the head, and ruled the manner of death as homicide. (TT 362)

Trial Court Opinion, 2/8/12, at 3-6.

On May 3, 2010, Appellant, Terrill Hicks, was convicted by a jury of his peers of one count of Murder of the First Degree, two counts of Aggravated Assault, one count of Criminal Attempt-Homicide, one count of Possession of Firearm by a Minor and one count of Criminal Conspiracy [to commit homicide].  On August 2, 2010, this Court sentenced Appellant to life without the possibility of parole on the charge of Murder in the First Degree, a consecutive ten to twenty years for the

Criminal Attempt-Homicide count, a consecutive five to ten years for the Aggravated Assault[1] and no further penalty on the remaining charges. Post sentence motions were denied on August 25, 2010 and Appellant did not file a timely Notice of Appeal. On June 29, 2011, Appellant filed a *pro se* Post-Conviction Relief Act petition seeking to have his appellate rights reinstated *nunc pro tunc*. On November 7, 2010, this Court reinstated appellate rights to Appellant. Appellant filed a Notice of Appeal on November 17, 2010 and a Statement of Errors Complained of on Appeal on November 30, 2010.

Trial Court Opinion, 2/8/12, at 2-3.

While this matter was pending on appeal, the United States Supreme Court issued an opinion in *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455 (2012). The Supreme Court held that mandatory sentences of life imprisonment without the possibility of parole for defendants under the age of eighteen at the time of their crimes violate the Eighth Amendment to the United States Constitution. *Miller*, 132 S. Ct. at 2464. On November 21, 2013, a panel of this Court vacated Appellant's judgment of sentence and remanded for resentencing. *Commonwealth v. Hicks*, 1822 WDA 2011, 91 A.3d 1293 (Pa. Super. filed November 21, 2013) (unpublished memorandum).

On October 23, 201[5], after a remand from the Superior Court of Pennsylvania, [the trial court] re-sentenced Appellant, Terrill Javon Hicks, on one count each of Murder of the First Degree, Criminal Attempt-Homicide, Aggravated Assault, Possession of a Firearm by a Minor, and Criminal Conspiracy. [The trial court] sentenced Appellant to 35 years to life imprisonment for the Murder in the First Degree conviction, 10 to 20 years for the Criminal Attempt-Homicide conviction, 2½ to

---

[1] The second conviction for aggravated assault merged with the attempted homicide conviction for sentencing purposes.

5 years for the Aggravated Assault conviction, both sentences to be served consecutive to the Homicide sentence, and no further penalty on the remaining counts. This Court denied Appellant's Motion for Post Sentence Relief on October 28, 2015. Appellant filed a Notice of Appeal and a Statement of Errors Complained of on Appeal on November 3, 2015.

Trial Court Opinion on Remand, 2/29/16, at 2 (footnotes omitted).

On appeal, Appellant presents the following issues for this Court's consideration:

1. Did the trial court err in denying Appellant's post sentencing motions since the evidence was insufficient to convict Appellant of aggravated assault-[serious bodily injury ("SBI")] of Michael Harris since Harris was inside of the house when shots were fired, and therefore could not have been the target or a possible victim of the shooter, who shot at Harrison and Dorsey, who were on the outside porch of the house. Moreover, the evidence was insufficient to convict Appellant of conspiracy (with co-defendant Raymont Walker) to commit homicide (of Harrison), attempted homicide of Dorsey, aggravated assault-SBI of Dorsey and aggravated assault-SBI of Harris since there was no evidence presented at trial of a conspiracy between Appellant and Walker to commit these crimes[?]

2. Did the trial court err in denying Appellant's post sentencing motions since Appellant's convictions of the homicide of Harrison, the attempted homicide of Dorsey, aggravated assault-SBI of Harris, aggravated assault-SBI of Dorsey, VUFA, and conspiracy with Walker were against the weight of the evidence due to the incredible and contradictory testimony of Commonwealth witnesses Harris, Dorsey, and John McDonald[?]

3. Did the trial court err in denying Appellant's post sentencing motions since the trial court erred in denying Appellant's motion in limine (pursuant to Pa.R.E. 403) regarding evidence surrounding the charges against Appellant at 8245-2007 (aggravated assault-SBI of Dorsey, aggravated assault-SBI of Harris, and VUFA regarding shots fired at the two victims on 4/23/07), which occurred four months after the instant

homicide/shooting at 6205-2007, and which were severed by Judge Nauhaus and to be tried separately (but were eventually nolle prossed after Appellant's homicide, etc. conviction at the instant case); the prejudicial effect of the evidence outweighed its probative value, and deprived Appellant of a fair jury trial[?]

4. Did the trial court err in denying Appellant's post sentencing motions since Appellant's murder 1 sentence of 35 years to life imprisonment, and, the imposition of a consecutive sentence [of] 10-20 years' imprisonment for attempted homicide, and a second consecutive sentence of 2.5-5 years' imprisonment, resulting in an aggregate sentence of 47.5 years to life imprisonment, were each and aggregately manifestly excessive since [Appellant] showed remorse and accepted responsibility for his crimes, he was taking steps to rehabilitate himself and demonstrated that he was a changed person, and it is unreasonable to believe that it will take another 39 years, when he will be 62 years old, for Appellant to reach the point at which he can return to and become a productive member and positive member of society?

Appellant's Brief at 3-4 (full capitalization omitted).[2]

In Appellant's first issue, he argues that:

there was insufficient evidence to convict [him] of the aggravated assault-SBI of Michael Harris, and insufficient evidence to convict of conspiracy with Raymont Walker to commit the homicide of Harrison, the attempted homicide of Dorsey, aggravated assault-SBI of Dorsey and aggravated assault-SBI of Harris since there was no evidence adduced at trial indicating that any conspiracy or agreement existed.

Appellant's Brief at 37. After reviewing the record, we conclude that Appellant is entitled to no relief.

Our standard of review when considering challenges to the sufficiency of the evidence is well settled:

_____

[2] For purposes of our discussion, we have renumbered Appellant's questions presented on appeal.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa. Super. 2003).

The trial court addressed Appellant's challenge to the sufficiency of the evidence as follows:

As to the conspiracy charge, an eyewitness identified Appellant as the shooter and identified Walker as being with Appellant. A few days earlier, Appellant, again accompanied by Walker, tried unsuccessfully to pull Harris into the street, presumably to exact revenge against the individual Appellant concluded had robbed him. Then later Appellant and Walker together went looking for Harris in the neighborhood. At least two witnesses testified to seeing one or both men with guns on these earlier occasions. The white Impala they had been using was observed circling Harris' residence. Later, Dorsey observed Appellant and Walker across the street from Harris' residence with a gun. At all times Walker was with Appellant, his self-described best friend. [Walker] made a statement that he was going to "ride" with Appellant, a statement which, given the context, easily could be interpreted beyond its literal meaning. Given the totality of circumstances, it was not error for the jury to find Appellant and

- 7 -

Walker conspired to commit the offenses for which Appellant was convicted[.]

Regarding the Aggravated Assault charge, even assuming the evidence did not support that Harris was an intended target of Appellant, Appellant is incorrect in asserting that he cannot be convicted of Aggravated Assault on an unintended victim. Aggravated Assault is defined as follows:

2702. Aggravated assault

(a) Offense defined.--A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

Appellant's assertion that aggravated assault requires an assailant to intend to cause serious bodily injury to a victim is clearly erroneous. Under a plain reading of the statute, one who causes serious bodily injury to another recklessly under circumstances manifesting extreme indifference to the value of human life is guilty of this offense. Shooting multiple rounds at people standing on the front porch of a house demonstrated Appellant's extreme indifference to the value of human life. *Commonwealth v. Hunter*, 644 A.2d 763 (Pa.Super 1994). This reckless conduct alone is sufficient to support his conviction for Aggravated Assault on a person inside the house, especially when shell casings were recovered from the floor inside that house.

Trial Court Opinion, 2/8/12, at 6-7.

We agree with the trial court's analysis. Appellant, in concert with Walker, pursued the victims and fired multiple shots at an occupied house, which resulted in Harrison's death and projectiles penetrating the house where Harris and Dorsey had hidden. In **Hunter**, the case cited by the trial

court, this Court explained that where an individual fired gunshots into a residence that he knew to be occupied, his indifference as to who might be shot does not lessen the seriousness of the act, and the intent to do serious bodily harm can be inferred from discharging a firearm into an occupied home. *See Hunter*, 644 A.2d 763, 764 ("Because there exists the probability that a person in the home could be harmed if someone were to shoot into the home, an attempt to cause serious bodily harm to such a person can be inferred.") (citing *Commonwealth v. Eaddy*, 614 A.2d 1203 (Pa. Super. 1992)). Accordingly, we conclude there was ample evidence establishing Appellant's guilt.

Next, Appellant argues that his convictions were against the weight of the evidence because the testimony of Commonwealth witnesses Harris, Dorsey, and John McDonald was contradictory and not credible. We conclude that no relief is due.

At the outset, we note that the weight attributed to the evidence is a matter exclusively for the fact finder, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Forbes*, 867 A.2d 1268, 1272-1273 (Pa. Super. 2005). The grant of a new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. *Commonwealth v. Bruce*, 916 A.2d 657, 665 (Pa. Super. 2007). Rather, the role of the trial judge is to determine that,

notwithstanding all of the facts, certain facts are so clearly of greater weight, that to ignore them or to give them equal weight with all of the facts is to deny justice. *Id*.

> An appellate court's purview:
>
> is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Knox*, 50 A.3d 732, 738 (Pa. Super. 2012) (internal citations omitted). An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Forbes*, 867 A.2d at 1273. "[T]he trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 879-880 (Pa. 2008).

Here, the focus of Appellant's argument is solely on the credibility of the Commonwealth's witnesses. Appellant's Brief at 39-45. Specifically, Appellant argues that one of the victims, Dorsey, denied knowing who the shooter was and delayed in reporting the identity of the shooter. *Id*. at 42. Appellant also points to the fact that Dorsey admitted he told police that he did not know it was Appellant who fired the gun, but at trial, Dorsey stated that his denial to police was because he planned to retaliate against Appellant. *Id*. (citing N.T., 4/27/10-5/3/10, at 111; 136-137). However, as noted above, it was for the jury as the finder of fact to determine the

credibility of the witnesses. **Forbes**, 867 A.2d at 1272-1273. This Court does not reweigh the evidence, and pursuant to our standard of review, we cannot conclude that the verdict in this matter in any way shocks the conscience. We discern no abuse of discretion by the trial court's denial of Appellant's post-sentence motion for a new trial based on the weight of the evidence.

In his third issue, Appellant avers that the trial court erred when it denied his motion *in limine* regarding charges against Appellant at trial court docket number 8245-2007. As noted above, docket number 8245-2007 concerned charges of aggravated assault and violations of the Uniform Firearms Act ("VUFA") filed against Appellant and Deondray Beasley due to the shots fired at Dorsey and Harris on April 23, 2007, four months after the homicide in the instant case. The trial court severed the cases, but the charges at 8245-2007 were *nol prossed* after Appellant's conviction in the case at bar. Appellant argues that evidence of the subsequent shooting incident at 8245-2007 was prejudicial and outweighed its probative value.

In evaluating the denial or grant of a motion *in limine*, our standard of review is the same as that utilized to analyze an evidentiary challenge. **Commonwealth v. Pugh**, 101 A.3d 820, 822 (Pa. Super. 2014). It is well settled that "[t]he admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." **Commonwealth v. Woodard**, 129

A.3d 480, 494 (Pa. 2015) (citation omitted). "An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id*. (citation omitted). "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

As discussed above, when Dorsey was initially questioned, he denied knowing that it was Appellant who had shot at Harris, Harrison, and him. N.T., 4/27/10-5/3/10, at 111. Dorsey testified that his reluctance to cooperate with the investigation was because "we don't deal with police." *Id*. at 171. However, after Appellant again shot at Dorsey in April of 2007, the event that underlies the separate charges against Appellant at docket number 8245-2007, Dorsey told police that it was Appellant who had shot at him both in the shooting that resulted in the death of Harrison in December of 2006 and in the April 2007 shooting. *Id*. at 112. Dorsey testified that he came forward because he came to fear for his safety. *Id*. at 174. In the motion *in limine* and now on appeal, Appellant argues that the events from April of 2007 should not have been admissible. We disagree.

"It is axiomatic in a criminal trial that all evidence offered by the prosecution will be prejudicial to the defendant.   Were mere prejudice the standard,   virtually   all   evidence   could   reasonably   be   excluded." ***Commonwealth v. Peer***, 684 A.2d 1077, 1083 (Pa. Super. 1996).   For this reason,   the   test   for   admissibility   is   whether   the   probative   value   of   the challenged evidence is outweighed by unfair prejudice.   ***Commonwealth v. K.S.F.***, 102 A.3d 480, 484-485 (Pa. Super. 2014); and Pa.R.E. 403.

The trial court addressed this issue as follows:

Appellant alleges this Court erred in denying Appellant's Motion in Limine, in that the prejudicial effect of testimony regarding an alleged shooting four months after the instant homicide outweighed any probative value.   Specifically, Dorsey testified that four months after witnessing the homicide, a number of individuals shot at him and other members of his family. (TT 115, 118-119)   Dorsey believed that he and his family were in danger.   As a result of this incident Dorsey decided to reveal additional information to the police. (TT 116, 163, 174)

"Evidence of a defendant's distinct crimes are not *generally* admissible against a defendant solely to show his bad character or his propensity for committing criminal acts, as proof of the commission of one offense is not *generally* proof of the commission of another."  *Commonwealth v. Billa*, 555 A.2d 835, 838 (Pa. 1989) (emphasis in original); *See* Pa.R.E. 404; *See also Commonwealth*[] *v. Lark*, 543 A.2d 491, 497 (Pa. 1988). However,   this   general   proscription   against   admission   of   a defendant's distinct bad acts is subject to numerous exceptions if the evidence is relevant for some legitimate evidentiary reason and not merely to prejudice the defendant by showing him to be a person of bad character.  *Billa, supra.*  Exceptions that have been recognized as legitimate bases for admitting evidence of a defendant's distinct crimes include, but are not limited to:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design such that proof of one crime naturally tends to prove

the others; (5) to establish the identity of the accused where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "res gestae" exception).

*Ibid*. citing Pa.R.E. 404(b); *See also Lark, supra*. This list is by no means exhaustive. *See Commonwealth v. Watkins*, 843 A.2d 1203, 1215 n. 1 (Pa. 2003). Additional exceptions are recognized when the probative value of the evidence outweighs the potential prejudice to the trier of fact. *Commonwealth v. Claypool*, 495 A.2d 176 (Pa. 1985). For example, an additional exception, explaining a delay in reporting a crime, was recognized in *Commonwealth v. Dillon*, 925 A.2d 131, 139 (Pa. 2007).

In the case *sub judice*, the critical eye-witness, Dorsey, delayed in fully reporting a crime. Only the testimony regarding the subsequent attempted shooting can explain to the fact finder such a delay. Thus, the probative value of this evidence is significant. The prejudicial effect of testimony regarding a later shooting, in which Appellant may have been involved but was not directly implicated, in the context of a homicide trial, while not insignificant, was considerably less than the probative value. The testimony of the shooting four months after the homicide does not establish any element of the crimes for which Appellant is charged, but it does explain the eyewitness' delay in coming forward. As such, this Court did not err in determining that its probative value outweighs any resulting prejudice to Appellant.

Trial Court Opinion, 2/8/12, at 8-10.

After review, we discern no abuse of discretion in the trial court's

ruling. As explained by the trial court, Pennsylvania recognizes a *res gestae*

exception, permitting the admission of evidence of other crimes or bad acts to tell "the complete story." ***Commonwealth v. Hairston***, 84 A.3d 657, 665 (Pa. 2014) (citations omitted). "Such evidence may be admitted, however, 'only if the probative value of the evidence outweighs its potential for unfair prejudice.'" ***Id***. (citing Pa.R.E. 404(b)(2)). Herein, the testimony regarding the April shooting provided the jury with the full history of the interaction among Appellant, his cohorts, and the victims. Moreover, the events in April of 2007 provided a background by which the jury could weigh Dorsey's testimony and his delay in identifying Appellant as the perpetrator of the crimes. Accordingly, we conclude that Appellant is entitled to no relief.

Finally, Appellant claims that the trial court abused its discretion when it resentenced him pursuant to 18 Pa.C.S. § 1102.1. Specifically, Appellant avers that his sentence of thirty-five years to life, coupled with two consecutive terms of imprisonment of ten to twenty years for attempted homicide and two and one-half to five years for aggravated assault, resulting in an aggregate sentence of forty-seven and one-half years to life imprisonment, were each and aggregately manifestly excessive. After review, we are constrained to conclude that the trial court abused its discretion in relying solely on section 1102.1 without considering the sentencing factors set forth in ***Commonwealth v. Knox***, 50 A.3d 732, 745 (Pa. Super. 2012) (citing ***Miller***, 132 S.Ct. at 2455).

Appellant's claims of sentencing errors are challenges to the discretionary aspects of his sentence. We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)). The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie

the sentencing process. ***Commonwealth v. Sierra***, 752 A.2d 910, 912–913 (Pa. Super. 2000).

Herein, the first three requirements of the four-part test are met: Appellant filed a timely appeal, raised the challenges in a post-sentence motion, and included in his brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

"We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Ahmad***, 961 A.2d 884, 886-887 (Pa. Super. 2008). Here, Appellant argues in his Pa.R.A.P. 2119(f) statement that the trial court abused its discretion by imposing a manifestly excessive sentence and by failing to provide the reasons for the sentence imposed. Appellant's Brief at 15.

"While a bald claim of excessiveness does not present a substantial question for review, a claim that the sentence is manifestly excessive, inflicting too severe a punishment, does present a substantial question." ***Commonwealth v. Haynes***, 125 A.3d 800, 807-808 (Pa. Super. 2015) (citation omitted). Moreover, the sentencing court's failure to set forth adequate reasons for the sentence imposed also raises a substantial question. ***Commonwealth v. Macias***, 968 A.2d 773, 776 (Pa. Super.

2009) (citation omitted). As we noted above, the trial court improperly relied on 18 Pa.C.S. § 1102.1(a) without making a determination of sentence duration based on *Knox* and *Miller*. Because the trial court was not bound by 18 Pa.C.S. § 1102.1(a), it could have, within its discretion, imposed a shorter minimum sentence on the homicide conviction.[3] Accordingly, we will consider the merits of Appellant's sentencing challenges.

First, we note that at Appellant's resentencing, the trial court reviewed the pre-sentencing expert reports, stated the applicable sentencing guideline ranges, and heard testimony from Appellant, his mother, his sisters, and a family friend. N.T., 10/23/15, at 4, 5-37, 46, 54-56. The trial court considered the above information and thoroughly explained its rationale for the sentences imposed. *Id*. at 54-55.

Additionally, in its Pa.R.A.P. 1925(a) opinion, the trial court further addressed this issue as follows:

> Appellant was originally sentenced to a mandatory term of life imprisonment on the Murder of the First Degree conviction. Due to the decision in *Miller v. Alabama*, Appellant was re-sentenced.[3] In response to *Miller v. Alabama*, Pennsylvania enacted 18 Pa.C.S. § 1102.1, which provides the mandatory minimum sentences for juvenile murderers. A court is required to sentence a juvenile between ages 15-18 who commits a

---

[3] We are constrained to point out that because *Miller* and its Pennsylvania progeny do not prohibit a life sentence, the trial court could have, within its discretion, imposed a longer minimum sentence. *See Knox*, 50 A.3d at 745 (noting that while *Miller* held that **mandatory** life sentences were unconstitutional, "our disposition does not mean that it is unconstitutional for a juvenile actually to spend the rest of his life in prison, only that the mandatory nature of the sentence, determined at the outset, is unconstitutional.") (emphasis added).

Murder in the First Degree to at least 35 years to life imprisonment. 18 Pa.C.S. § 1102.1(a)(1).

> [3] In *Miller v. Alabama*, the Supreme Court held that "mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments." *Miller v. Alabama*, 132 S.Ct. 2455 (2012).

In accordance with § 1102.1, this Court resentenced Appellant to 35 years to life imprisonment. This Court sentenced Appellant to the mandatory minimum required by Pennsylvania law on the Murder in the First Degree count. As the sentence was statutorily required, his claim of excessiveness as to this count lacks merit.

Appellant was sentenced in the standard range for the counts of Criminal Attempt-Homicide and Aggravated Assault. None of these sentences are individually excessive because they are each within the required or standard range proscribed by the Pennsylvania Sentencing Guidelines. A standard range sentence carries its own presumption of reasonability. *Commonwealth v. Walls*, 926 A.2d 957, 964-965 (Pa. 2007).

Furthermore, the aggregate sentence imposed is not excessive upon consideration of the sentencing factors of § 9721. Appellant heinously murdered 16 year-old Kevin Harrison on his own front porch and attempted to do the same to Kendall Dorsey and Michael Harris. Appellant is not entitled to a volume discount nor should he receive a benefit for his poor aim. It is this Court's obligation to protect the public from those who commit vicious crimes such as those committed by Appellant. This Court did not act unreasonably or with prejudice. This sentence is thoroughly reflective of the gravity of the offense as it relates to the three victims, particularly Kevin Harrison who was robbed of his life, and of the need to protect the community, yet allows the possibility for Appellant to reenter society eventually as a rehabilitated man.

Trial Court Opinion on Remand, 2/29/16, at 4-6.

The trial court correctly noted that 18 Pa.C.S. § 1102.1 carries a mandatory minimum sentence of thirty-five years to life imprisonment for an offender who is between fifteen and eighteen years of age at the time of the offense. Appellant was sixteen years old at the time of the homicide, and the trial court imposed a thirty-five years to life sentence pursuant to section 1102.1. However, section 1102.1 applies only to convictions that occurred "after June 24, 2012." 18 Pa.C.S. § 1102.1(a). Here, Appellant was convicted on May 3, 2010, prior to the effective date of 18 Pa.C.S. § 1102.1(a).

In *Commonwealth v. Batts*, 125 A.3d 33 (Pa. Super. 2015) ("*Batts III*"), our Court addressed this issue as follows:

> [T]he new Section 1102.1 did not apply to Appellant because Appellant was convicted of murder in 2007, before the effective date of Section 1102.1. Instead, Appellant was subject to the version of Section 1102 that was in effect at the time of his sentencing. Accordingly, in [*Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013) ("*Batts II*")], our Supreme Court examined "the appropriate remedy for the Eighth Amendment violation that, under *Miller*, occurred when Appellant was mandatorily sentenced to life imprisonment without the possibility of parole upon his conviction for first-degree murder" in context of the then-existing statutory scheme in Section 1102. *Batts II*, *supra*.

> In *Batts II*, our Supreme Court explained that *Miller's* holding is narrow, *i.e.*, mandatory sentences of life imprisonment without the possibility of parole are not constitutional when imposed on juveniles convicted of murder. It accordingly rejected Appellant's argument that *Miller* rendered Section 1102 unconstitutional in its entirety as applied to juveniles, reasoning as follows.

> Section 1102, which mandates the imposition of a life sentence upon conviction for first-degree murder, *see* 18 Pa.C.S. § 1102(a), does not itself contradict *Miller*; it is only when that mandate becomes a sentence of life-without-parole as applied to a juvenile offender—which occurs as a result of the interaction between Section 1102, the Parole Code, *see* 61 Pa.C.S. § 6137(a)(1), and the Juvenile Act, *see* 42 Pa.C.S. § 6302—that *Miller's* proscription squarely is triggered. *Miller* neither barred imposition of a life-without-parole sentence on a juvenile categorically nor indicated that a life sentence with the possibility of parole could never be mandatorily imposed on a juvenile. Rather, *Miller* requires only that there be judicial consideration of the appropriate age-related factors set forth in that decision prior to the imposition of a sentence of life imprisonment without the possibility of parole on a juvenile.

*Batts II*, *supra* at 295–296 (some citations omitted). The Court also noted that it would not expand the holding of *Miller* absent a common law history or a legislative directive. *Id*. at 296 (citation omitted). Accordingly, our Supreme Court remanded to the trial court with instructions to consider the following age-related factors in resentencing Appellant.

> At a minimum the trial court should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

> ***Commonwealth v. Knox***, 50 A.3d 732, 745
> (Pa.Super.2012) (citing ***Miller***, 132 S.Ct. at 2455)
> (remanding for resentencing a juvenile who had
> previously received a mandatory life without parole
> sentence in violation of ***Miller***, and instructing trial
> court to resentence juvenile to either life with parole
> or life without parole), *appeal denied*, 620 Pa. 721,
> 69 A.3d 601 (2013). We agree with the
> Commonwealth that the imposition of a minimum
> sentence taking such factors into account is the most
> appropriate remedy for the federal constitutional
> violation that occurred when a life-without-parole
> sentence was mandatorily applied to Appellant.

***Batts II***, ***supra*** at 297[.]

***Batts III***, at 38–39 (Pa. Super. 2015). However, in ***Batts III***, this Court

also discussed Justice Baer's concurring opinion in ***Batts II***:

> Justice Baer authored a concurring opinion, joining in the
> majority's decision to "remand the case to the trial court for it to
> resentence Appellant based upon his individual circumstances to
> a sentence of life imprisonment either with the possibility of
> parole or without the possibility of parole for his conviction of
> first-degree murder committed when he was a fourteen year old
> juvenile." [***Batts II***] at 299-300 (Baer, J., concurring). Justice
> Baer further opined that, to achieve uniformity in sentencing,
> trial courts should be guided by Section 1102.1 in resentencing
> juveniles whose life without parole sentences violated ***Miller***, but
> would not otherwise be resentenced under Section 1102.1
> because they were convicted before ***Miller*** was decided. ***Id***. at
> 300 (Baer, J., concurring).

***Batts III***, at 39.[4]

---

[4] We note that the Supreme Court granted allowance of appeal on April 19, 2016, and entered the following order:

> **AND NOW**, this 19th day of April, 2016, the Petition for
> Allowance of Appeal is **GRANTED**, **LIMITED TO** the following
> issues raised by Petitioner:

Pursuant to the holding in **Batts II**, we remand this matter to the trial court to resentence Appellant in accordance with the factors set forth in **Knox** and **Miller**. As the resentencing has the potential to disrupt the trial court's entire sentencing scheme, we vacate all of Appellant's sentences at

---

1. In **Miller v. Alabama**, the U.S. Supreme Court outlawed mandatory life without parole for juveniles (LWOP), and instructed that the discretionary imposition of this sentence should be "uncommon" and reserved for the "rare juvenile offender whose crime reflects irreparable corruption."

    i. There is currently no procedural mechanism to ensure that juvenile LWOP will be "uncommon" in Pennsylvania. Should this Court exercise its authority under the Pennsylvania Constitution to promulgate procedural safeguards including (a) a presumption against juvenile LWOP; (b) a requirement for competent expert testimony; and (c) a "beyond a reasonable doubt" standard of proof?

    ii. The lower court reviewed the Petitioner's sentence under the customary abuse of discretion standard. Should the Court reverse the lower court's application of this highly deferential standard in light of **Miller**?

2. In **Miller**, the U.S. Supreme Court stated that the basis for its individualized sentencing requirement was Graham's comparison of juvenile LWOP to the death penalty. The Petitioner received objectively less procedural due process than an adult facing capital punishment. Should the Court address the constitutionality of the Petitioner's resentencing proceeding?

The Petition for Allowance of Appeal is DENIED with respect to Petitioner's third stated issue.

**Commonwealth v. Batts**, 135 A.3d 176 (Pa. 2016).

trial court docket number CP-02-CR-0006205-2007, and remand for resentencing at all counts. *See Commonwealth v. Vanderlin*, 580 A.2d 820, 831 (Pa. Super. 1990) ("[I]f a trial court errs in its sentence for one count in a multi-count case, then all sentences for all counts will be vacated so that the court can re-structure its entire sentencing scheme."). Because we have vacated Appellant's judgment of sentence as a whole and remanded for resentencing on each count, we need not address Appellant's challenge to the duration or consecutive nature of the sentences previously imposed.

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016