J-A30016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KRISTOPHER HEGGINS | |
| Appellant | No. 1820 WDA 2016 |

Appeal from the Judgment of Sentence imposed August 10, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0007504-2000

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KRISTOPHER HEGGINS | |
| Appellant | No. 1821 WDA 2016 |

Appeal from the Judgment of Sentence imposed August 10, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0007508-2000

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KRISTOPHER HEGGINS | |
| Appellant | No. 1836 WDA 2016 |

Appeal from the Judgment of Sentence imposed August 10, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0007508-2000

BEFORE:  BOWES, STABILE, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                **FILED JANUARY 3, 2019**

In these consolidated appeals,[1] Appellant Kristopher Heggins appeals his sentence of thirty years to life imprisonment imposed during his resentencing for second degree murder,[2] a crime committed in 1997 while Appellant was a juvenile.  We vacate Appellant's sentence and remand for further proceedings.

The trial court summarized the history of this case as follows:

[Appellant] has appealed from the judgment of sentence entered on August 10, 2016 following a re-sentencing hearing and grant of [p]ost-[c]onviction collateral relief . . . .

This case has a long and complex procedural history.  [Appellant] was charged with [c]riminal [h]omicide, [r]obbery and [c]riminal [c]onspiracy in connection with the shooting death of Salvatore Brunsvold.  At the time of Mr. Brunsvold's death, [Appellant] was

---

[1] We consolidated these appeals *sua sponte* in an order dated December 28, 2016.

[2] 18 Pa.C.S. § 2502(b).

- 2 -

16 years old. Following a jury trial held before this [c]ourt in September 2000, [Appellant] was convicted of [s]econd-[d]egree [m]urder and the remaining charges. The judgment of sentence was affirmed by the Superior Court on September 18, 2002 and his [p]etition for [a]llowance of [a]ppeal was denied by the Pennsylvania [Supreme] Court on June 20, 2003.

On March 17, 2004, [Appellant] filed a *pro se* Post Conviction Relief Act Petition. J. Richard Narvin, Esquire, was appointed to represent [Appellant], and after several delays, an [a]mended PCRA Petition was filed on July 16, 2007. This [c]ourt initially dismissed the [a]mended [p]etition, but after reviewing counsel's [m]otion to [r]econsider, this [c]ourt vacated the dismissal and scheduled an evidentiary hearing on the [a]mended [p]etition. Several changes of counsel and corresponding postponements ensued, and the evidentiary hearing was eventually held on April 21, 2010.

Following the evidentiary hearing, this [c]ourt thoroughly reviewed the record and trial transcripts in their entirety. On September 22, 2010, this [c]ourt convened a second PCRA hearing at which time it found that trial counsel was ineffective for failing to object to the testimony of the Danville Correctional Institute witnesses regarding [Appellant]'s supposed gang membership and past criminal activity and also for introducing [Appellant]'s otherwise inadmissible prior convictions. Consequently, this [c]ourt granted collateral relief in the form of a new trial. The Commonwealth appealed the award of a new trial and the Superior Court reversed this [c]ourt's [o]rder on May 9, 2012. Reargument was subsequently denied on August 9, 2012. No further action was taken until [Appellant] sought, and was granted, leave to file a [p]etition for [a]llowance of [a]ppeal *[n]unc [p]ro [t]unc*. The [p]etition for [a]llowance of [a]ppeal was filed and was denied on August 27, 2013.

While the appeal of this [c]ourt's [o]rder for a new trial was pending, [Appellant] filed a counseled [PCRA] [p]etition, his second, on July 10, 2012, raising a claim pursuant to ***Miller v. Alabama***, [567 U.S. 460] (2012). However, shortly thereafter, he filed a [p]etition to [w]ithdraw the PCRA Petition, and this [c]ourt granted that request on July 23, 2012.

On October 24, 2013, [Appellant] filed a *pro se* "Post Conviction Relief Act Continuance/Extension of Original PCRA Petition,"

which he attempted to characterize as a second amendment to his 2004 PCRA [p]etition but was, in actuality, his third PCRA [p]etition. J. Richard Narvin, Esquire, was appointed to represent [Appellant], though [Appellant] later sought to have Mr. Narvin removed from the case due to a "personality" difference. That motion was denied. Thereafter, Mr. Narvin filed a **Turner**[3] "[n]o [m]erit" [l]etter citing the untimeliness of the [p]etition and sought permission to withdraw from the representation, which this [c]ourt then permitted. After giving appropriate notice of its intent to do so and reviewing [Appellant]'s response thereto, this [c]ourt dismissed [Appellant]'s third PCRA [p]etition on August 18, 2014. A direct appeal was taken and remained pending for some time, though it was eventually remanded for resentencing on March 15, 2016 in light of the new decision in **Montgomery v. Louisiana**, 136 S.Ct. 718 (2016).

However, on February 18, 2016, several weeks after the **Montgomery** decision but before the Superior Court took action on the prior appeal, [Appellant] filed his fourth [PCRA] [p]etition raising another **Miller** claim, this time in conjunction with the retroactivity ruling in **Montgomery**. Counsel was appointed to represent [Appellant] and an [a]mended [p]etition quickly followed (also before the Superior Court's [r]emand [o]rder). Thereafter, this [c]ourt granted relief in the form of a resentencing hearing.

The resentencing hearing was held on August 10, 2016. After an extensive review of the record and consideration of testimony from [Appellant] and his mother, a victim impact statement from Mr. Brunsvold's widow and arguments from counsel, this [c]ourt imposed a term of imprisonment of 30 years to life.[4] Timely [p]ost-[s]entence [m]otions were filed and were denied on November 4, 2016. This appeal followed.[5]

---

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988).

[4] The trial court imposed no further penalty on Appellant's robbery and conspiracy convictions.

[5] Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Trial Court Opinion, 5/5/17, at 1-3.

Several other important facts deserve mention. The Commonwealth neither alleged nor proved that Appellant was the shooter. During trial, the Commonwealth argued that Appellant was guilty of second-degree murder, not first degree murder. N.T., 9/29/00, at 41-42 (there was "more than ample evidence to convict the defendant of murder of the second degree. That is acting in concert with another person to commit a robbery resulting in death making him responsible as an accomplice or conspirator"). In particular, the Commonwealth argued that Appellant admitted that he "was teaching this other person how to do a robbery, and that the robbery went bad and resulted in the shooting of [Mr. Brunsvold]." *Id.* at 47 (closing argument). The victim of the shooting was a minister who was married with three young children. A Commonwealth witness testified that Appellant stated that his compatriot fired the gun, and that he himself would never have shot the victim. N.T., 9/26/00, at 49. The trial court charged the jury on the elements of second-degree murder and added the following instruction:

> When two people are partners in a successful or unsuccessful attempt to commit a felony and one of them kills a third party, both parties may be found guilty of felony murder. Neither partner has to intend to kill or to anticipate that anyone will be killed. The person killed can be someone other than the victim of a felony.

*Id.* at 80.

We further note that the trial court sentenced Appellant to a maximum of life imprisonment with the possibility of parole. At Appellant's resentencing hearing, the trial court gave the following reasons for this sentence:

Mr. Heggins, when I sentenced you the first time it was a really easy decision. I didn't have any problem, it was mandatory, and I truly believed that you needed to be in jail for the rest of your life. I had some doubts when I reviewed your case as a PCRA. I was not convinced that your confession to this crime was given voluntarily on your part, and therefore I ordered you a new trial. However, the Superior and Supreme Court have reversed me and I respect their decision. So the truth is that you have been convicted and stand convicted. My feelings about the confession apparently were not persuasive.

To start off with, you committed an extraordinarily heinous crime, and I do believe you committed this crime. I love that your mother doesn't believe it, but I think you did commit it. **You were the perpetrator, and you murdered by shooting in the head a man of God who was married with three little children.** There was no reason for this crime. You didn't know each other, you weren't in opposite gangs. **You just arbitrarily went up and killed him.**

You do have a bad juvenile record, I agree with [the Commonwealth]. However, that was a significant period of time ago. In your behalf, I find that you have continued family support as you did during the trial, and you have indicated your remorse. I did notice that you did not do well until about two years ago and do have 22 misconducts at Frackville. Now all of a sudden the *Miller* case came down and you start to be an achiever and start doing things to help making [*sic*] your life better.

I have to believe that there is some hope in this world for juveniles that commit really, really awful crimes, that they will be rehabilitated, and I am hoping that you will be one of those people. At the count of second degree murder, I am going to sentence you to serve not less than 30 years, nor more than life . . . .

I would also like the record to reveal that I have been looking into this issue and this case for at least 30 days. I spent an

incredible amount of time, an incredible amount of thought. I hope, Mr. Heggins, that you don't let me down when you get out. You will still be young enough to do something with your life.

N.T., 8/10/16, at 15-17 (emphasis added).

Appellant raises two issues in this appeal:

1. Did the sentencing court commit legal error by sentencing [Appellant] to confinement for 30 years to life on his conviction for second degree murder because both the minimum and maximum term of that sentence is unconstitutional as imposed on a juvenile who did not himself kill the victim or have the intention of doing so, and who was not found to be incorrigible by the sentencing court?

2. Did the sentencing court err by sentencing [Appellant] to confinement for 30 years to life on his conviction for second degree murder because the sentencing court's consideration of the factors in **Miller v. Alabama**, 567 U.S. 460 (2012) and **Commonwealth v. Knox**, 50 A.3d 732 (Pa. Super. 2012), was inadequate and erroneous, did not account for the presumption of immaturity and reduced culpability of juvenile offenders, and did not afford [Appellant] an individualized analysis of an appropriate sentence?

Appellant's Brief at 4-5.

Appellant's second argument is dispositive, thus making it unnecessary to address the constitutional claim in his first argument. **Commonwealth v. Herman**, 161 A.3d 194, 209 (Pa. 2017) ("courts should avoid constitutional issues when the issue at hand may be decided upon other grounds") (citations omitted).

Appellant makes two claims in his second argument: (1) the trial court failed to consider all thirteen sentencing factors for juveniles delineated in

***Knox***;[6] and (2) the trial court "fundamentally misapprehended the nature of the underlying offense" and ignored other crucial sentencing criteria.

These claims challenge the discretionary aspects of Appellant's sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute." ***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa. Super. 2014). Instead, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. ***Commonwealth v. W.H.M.***, 932 A.2d 155, 163 (Pa. Super. 2007).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

---

[6] These factors include:

> [the] juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

***Knox***, 50 A.3d at 745.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms that underlie the sentencing process. *Commonwealth v. Sierra*, 752 A.2d 910, 912–13 (Pa. Super. 2000).

Here, Appellant timely appealed, raised challenges to the discretionary aspects of his sentence in post-sentence motions, and included in his brief the necessary Pa.R.A.P. 2119(f) statement of reasons for allowance of appeal. Further, Appellant raised substantial questions by arguing the trial court failed to apply all of the *Knox* factors and fundamentally misperceived the nature of his offense. *Commonwealth v. Macias*, 968 A.2d 773, 776 (Pa. Super. 2009) (sentencing court's failure to set forth adequate reasons for sentence raises substantial question). We therefore proceed to the merits of his claims.

Appellant's first claim—that the trial court failed to apply the *Knox* factors—lacks merit. To explain why, we sketch the development of the law since *Miller v. Alabama*. On June 25, 2012, the United States Supreme Court held in *Miller* that mandatory sentences of life imprisonment without parole ("LWOP" or "LWOP sentence") for minors violate the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.*, 567 U.S. at 469–89. Several weeks after *Miller*, this Court held in *Knox* that, in

view of **Miller**, trial courts could not sentence juveniles to LWOP without first considering, at a minimum, the thirteen factors recited above in footnote 6. **Knox**, 50 A.3d at 745.

In October 2012, the General Assembly reacted to **Miller** by enacting 18 Pa.C.S.A. § 1102.1, which provides, *inter alia*, that an individual between the ages of 15 and 17 years old convicted of second-degree murder after June 24, 2012 must be sentenced to a minimum term of thirty years to life imprisonment. 18 Pa.C.S.A. § 1102.1(c)(1).

Following Section 1102.1's enactment, our Supreme Court issued two decisions that further shaped sentencing contours for juveniles convicted of first or second-degree murder prior to June 25, 2012. In **Commonwealth v. Batts**, 66 A.3d 286 (Pa. 2013) ("**Batts I**"), the Court held that Section 1102.1 does not apply to those minors, like Appellant, who were convicted of first or second-degree murder prior to June 25, 2012. **Batts I**, 66 A.3d at 293. Subsequently, in **Commonwealth v. Batts**, 163 A.3d 410 (Pa. 2017) ("**Batts II**"), the Court held:

> When sentencing a juvenile to life in prison with the possibility of parole (regardless of whether a life-without-parole sentence was sought by the Commonwealth), the sentencing court should be guided by [S]ection 1102.1(a) in determining the minimum term of imprisonment. Although not directly applicable to juveniles convicted of first-degree murder prior to **Miller**, as Justice Baer recognized in his concurrence in **Batts I**, we cannot ignore the policy determination made by the General Assembly as to the minimum sentence a juvenile convicted of first-degree murder must receive . . . .

> In sentencing a juvenile offender to life with the possibility of parole, traditional sentencing considerations apply. ***See*** 42 Pa.C.S.[A.] § 9721(b). The sentencing court should fashion the minimum term of incarceration using, as guidance, [S]ection 1102.1(a) of the Crimes Code.

***Batts II***, 163 A.3d at 457, 460.

Pursuant to ***Batts II***, ***Knox*** no longer applies when, as here, the trial court declines to sentence a juvenile homicide offender to LWOP. Instead of applying ***Knox*** in this circumstance, the trial court need only apply "traditional sentencing considerations" and seek guidance from Section 1102.1(a).[7] ***Id.***

Appellant's next claim is more successful. He contends that the trial court ignored several criteria within Section 1102.1 at resentencing, including Appellant's diminished capacity and immaturity due to his age at the time of his crime, the effect of peer pressure on his decisionmaking, and his neighborhood environment. In addition, Appellant argues that the trial court

---

[7] In view of ***Batts II***, Appellant's reliance on ***Commonwealth v. Hicks***, 151 A.3d 216 (Pa. Super. 2016), is misplaced. In ***Hicks***, a juvenile defendant was convicted of first-degree murder prior to, but sentenced following, June 25, 2012, the effective date of Section 1102.1. The trial court sentenced the defendant to 35 years to life imprisonment, reasoning that this was the mandatory minimum sentence under Section 1102.1 for offenders between 15 and 18 years of age at the time of the offense. This Court reversed on the ground that Section 1102.1 did not apply to homicides committed prior to June 25, 2012, and we remanded for resentencing in accordance with ***Knox*** and ***Miller***. ***Id.***, 151 A.3d at 230. ***Hicks***' instruction to apply ***Knox***, however, no longer controls due to ***Batts II***'s directive to apply traditional sentencing considerations and seek guidance from Section 1102.1 in this situation.

- 11 -

fundamentally misperceived his role in the victim's death by claiming that Appellant himself shot the victim.

Section 1102.1(d) provides:

In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) **The nature and circumstances of the offense committed by the defendant.**

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

(i) Age.

**(ii) Mental capacity.**

**(iii) Maturity.**

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

**(vii) Other relevant factors.**

*Id.* (emphasis added).

Because Appellant's crime took place before June 25, 2012, the trial court was required to use the criteria within Section 1102.1(d) as "guidance" for fashioning an appropriate sentence. *Batts II*, 163 A.3d at 457, 460. The court performed this duty improperly. It misconstrued the "nature and circumstances" of Appellant's offense, 18 Pa.C.S.A. § 1102.1(d)(4), by stating erroneously at resentencing that Appellant was "the perpetrator" who "just arbitrarily went up and shot" the victim. N.T., 8/10/16, at 16. The Commonwealth neither alleged nor proved that Appellant was the shooter; it only proved that Appellant was the accomplice or co-conspirator of the perpetrator. In addition, while the court mentioned Appellant's juvenile offense record, it did not address his mental capacity or immaturity at the time of his crime, both of which are pertinent under Section 1102.1(d)(7). Finally, Appellant's treatment records in prison indicate that his criminal conduct was partly the result of peer pressure during his childhood and adolescence, "[an]other relevant factor[]" under Section 1102.1(d)(7), but the court failed to take this into consideration. These errors constitute an abuse of the court's sentencing discretion that might well have affected the length of Appellant's sentence, thereby necessitating additional sentencing proceedings.

We vacate Appellant's sentence and remand for a new sentencing proceeding in which the trial court applies traditional sentencing factors and seeks guidance from all factors articulated in Section 1102.1(d). In particular, we direct the trial court to (1) take into account that Appellant was not the actual shooter, (2) factor Appellant's mental capacity and maturity, or lack thereof, into its sentencing determination, and (3) assess whether peer pressure during Appellant's childhood and adolescence should affect Appellant's sentence. Since resentencing has the potential to disrupt the trial court's entire sentencing scheme, we not only vacate Appellant's sentence for second-degree murder but also his sentences for robbery and conspiracy and remand for resentencing on all convictions. ***Commonwealth v. Vanderlin***, 580 A.2d 820, 831 (Pa. Super. 1990) ("if a trial court errs in its sentence for one count in a multi-count case, then all sentences for all counts will be vacated so that the court can re-structure its entire sentencing scheme").

Judgment of sentence vacated. Case remanded for further proceedings in accordance with this memorandum. Jurisdiction relinquished.

Judge Bowes files a concurring memorandum.

President Judge Emeritus Ford Elliott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/3/2019