J-S23008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DUSTIN D. CROMPTON, | |
| Appellant | No. 1288 EDA 2015 |

Appeal from the Judgment of Sentence of December 4, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006722-2013

BEFORE:  OLSON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 21, 2017**

Appellant, Dustin D. Crompton, appeals from the judgment of sentence entered on December 4, 2014, following his bench trial convictions for aggravated assault, simple assault, conspiracy to commit simple assault, recklessly endangering another person, and possessing an instrument of crime.[1]   We affirm Appellant's convictions, vacate the sentence for conspiracy to commit simple assault and remand for resentencing, and affirm Appellant's remaining sentences.

We briefly summarize the facts and procedural history of this case as follows.  On September 26, 2012, Kristen Kubach, a co-defendant, got into a verbal altercation with the victim inside a Philadelphia house where both

---

[1] 18 Pa.C.S.A. §§ 2702, 2701, 903, 2705, and 907, respectively.

individuals resided. Kubach left, but returned later with her brother, Appellant, and Appellant's girlfriend, Helena Morales. An altercation ensued with Appellant and the victim exchanging punches. The victim landed onto a couch and Appellant, Kubach, and Morales began punching and kicking the victim. Morales held the victim so that Appellant could continue punching him. The victim testified that he felt a hard object strike his head and heard Kubach and Morales encouraging Appellant to continue hitting the victim. The victim's fiancé was an eyewitness to the incident. She testified that she observed Kubach strike the victim, across the left side of his head, with a baseball bat. The victim's fiancé was able to stop Kubach from striking the victim again with the bat. Morales took the bat and left the scene in Appellant's car, along with Appellant and Kubach. The victim was taken to the hospital where he was treated for nausea, vomiting, and loss of consciousness. The victim also required 14 stitches for a one-inch gash on his forehead.

The trial court held a bench trial on September 18, 2014 and found Appellant guilty of the aforementioned charges. On December 4, 2014, the trial court sentenced Appellant to three-and-one-half to seven years of imprisonment for aggravated assault and an identical, concurrent sentence for conspiracy to commit simple assault.[2] The trial court imposed no further

_____

[2] Upon review of the certified record, the sentencing order states that the conspiracy to commit simple assault was graded as a second-degree
*(Footnote Continued Next Page)*

penalty on the remaining convictions. On December 12, 2014, Appellant filed a motion for reconsideration, which was denied by operation of law on April 10, 2015. This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

> I.    Is [Appellant] entitled to an arrest of judgment as the evidence [was] insufficient to sustain the verdict?
>
> II.   Is [Appellant] entitled to a new trial on all charges as the greater weight of the evidence does not support the verdict?

Appellant's Brief at 3.

First, Appellant argues that the evidence was insufficient to support his convictions. Regarding conspiracy, he claims that just because he "came to the home with the two women does not mean there was a conspiracy." *Id.* at 11. He claims that the fight at issue began as a fistfight between him and the victim and that Kubach and Morales joined in the "general melee" without provocation. *Id.* at 10. Regarding aggravated assault, Appellant

*(Footnote Continued)* ────────────

misdemeanor. As the trial court later recognized, and we will discuss at length later, because the statutory maximum for a second-degree misdemeanor is two years, the sentence of three-and-one-half to seven years for conspiracy to commit simple assault is illegal. *See* 18 Pa.C.S.A. § 1104.

[3] Appellant filed a notice of appeal on May 5, 2015. On January 27, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on February 16, 2016. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 3, 2016.

claims he did not strike the victim with a baseball bat, did not "even [know] that the bat was [at the scene,] and the evidence does not indicate that he encouraged [Kubach] to use the bat." *Id.*

Our standard of review when considering challenges to the sufficiency of the evidence is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hicks*, 151 A.3d 216, 221–222 (Pa. Super. 2016) (citation omitted).

The trial court determined that the evidence was sufficient to support a conspiracy because the fight at issue was in response to an earlier altercation and Appellant and his co-defendants "all drove to the property together, entered the house together, fought together, and subsequently left

together." Trial Court Opinion, 8/3/2016, at 8. During the altercation, the two co-defendants encouraged Appellant to continue punching the victim. *Id.* The trial court found there was sufficient evidence to support Appellant's aggravated assault conviction because Appellant punched the victim "in the face multiple times, while holding [the victim] down, rendering him unable protect himself" and that Appellant "acted with the intent to cause protracted impairment or disfigurement to the several [of the victim's] sensitive bodily members[,] including his eyes and nose." *Id.* at 7. Moreover, the trial court determined that even if Appellant did not intend for his co-defendant to strike the victim with a baseball bat, such conduct constitutes aggravated assault, and Appellant was criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

In his second issue presented, Appellant similarly claims his convictions were against the weight of the evidence because he "could not have possibly entered into an agreement to commit an aggravated assault[4] which necessarily implicated the bat where the bat was already at the scene of the event and where the bat was not brought to the scene by [Appellant] or his alleged co-conspirators." *Id.* at 12-13.

Our standard of review is clear:

> the weight attributed to the evidence is a matter exclusively
> for the fact finder, who is free to believe all, part, or none of

---

4 Appellant was actually convicted of conspiracy to commit simple assault.

the evidence and to determine the credibility of the witnesses. The grant of a new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that, notwithstanding all of the facts, certain facts are so clearly of greater weight, that to ignore them or to give them equal weight with all of the facts is to deny justice.

An appellate court's purview:

is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Id.* at 223 (citations and quotations omitted).

Here, the trial court "gave great weight to the testimony of [the victim] and [his fiancé] and found their testimony to be credible." Trial Court Opinion, 8/3/2016, at 9. The trial court also determined that "inconsistent testimony as to the wooden bat's ownership is not only minor but also not relevant to the trial." *Id.*

We have reviewed the certified record, parties' briefs, relevant law and the trial court's opinion entered on August 3, 2016. We conclude there has been no error or abuse of discretion in this case and that the trial court's August 3, 2016 opinion meticulously, thoroughly, and accurately disposes of the issues on appeal. Therefore, we affirm on the basis of the trial court's opinion and adopt it as our own. Because we have adopted the trial court's

- 6 -

opinion, we direct the parties to include the trial court's opinion in all future filings relating to our examination of the merits of this appeal, as expressed herein.

Finally, the trial court recognized that it illegally sentenced Appellant to three-and-one-half to seven years of imprisonment for conspiracy to commit simple assault, a second-degree misdemeanor. Trial Court Opinion, 8/3/2016, at 11. Upon review, we agree.

Inchoate crimes like conspiracy have the same maximum sentences as the underlying crimes to which they relate. *See* 18 Pa.C.S.A. § 106; *see also* 18 Pa.C.S.A. § 905(a). Simple assault is a second-degree misdemeanor. *See* 18 Pa.C.S.A. § 2701(b). A person who has been convicted of a second-degree misdemeanor is subject to a maximum sentence of two years. *See* 18 Pa.C.S.A. § 1104. "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." *Commonwealth v. Randal*, 837 A.2d 1211, 1214 (Pa. Super. 2003) (citation omitted). Challenges to "[a]n illegal sentence can never be waived and may be reviewed *sua sponte* by this Court." *Id.* "An illegal sentence must be vacated." *Id.*

Here, Appellant's sentence for conspiracy to commit simple assault was clearly illegal and must be corrected. "If this Court determines that a sentence must be corrected, we are empowered to either amend the sentence directly or to remand the case to the trial court for resentencing." *Commonwealth v. Benchoff*, 700 A.2d 1289, 1294 (Pa. Super. 1997)

(citation omitted); *see also Randal*, 837 A.2d at 1214 (stating generally appellate court can amend sentence directly when record makes clear sentencing court had no authority to impose certain part of sentence). "[I]f we determine that a correction by this [C]ourt may upset the sentencing scheme envisioned by the trial court, the better practice is to remand." *Id.* (citation and internal quotations omitted). Moreover, it is well-settled that "[a]n appellate [c]ourt has no power to impose a sentence; that power is to be exercised exclusively by the trial court." *Commonwealth v. Holiday*, 954 A.2d 6, 10 (Pa. Super. 2008) (citation omitted). Where an appellate court determines a sentence is illegal or otherwise improper, the Court may not "superimpose its judgment on the trial court by directing the sentence to be imposed." *Id.*

In this case, the trial court recognized that it imposed an illegal sentence for conspiracy to commit simple assault, stated the statutory maximum sentence is two years for a second-degree misdemeanor, and requested we remand for resentencing on this conviction. Trial Court Opinion, 8/3/2016, at 11. However, the trial court did not specify the sentence it desired to impose upon resentencing or we could amend the sentence directly. Accordingly, we vacate Appellant's sentence for conspiracy to commit simple assault and remand to the trial court for resentencing.

Appellant's convictions for all offenses affirmed. Sentence for conspiracy to commit simple assault vacated and remanded for resentencing. Remaining sentences affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2017

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION-CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0006722-2013
:
vs. : 1288 EDA 2015
:
DUSTIN CROMPTON :

**FILED**

**O P I N I O N**

AUG 0 3 2016

COVINGTON, J.

Criminal Appeals Unit
First Judicial District of PA

## Procedural History

On September 18, 2014, the Defendant was found guilty, following a waiver trial, of Aggravated Assault (18 § 2702 §§ A), Conspiracy to commit Simple Assault (18 § 903 §§ C), Simple Assault (18 § 2701 §§ A), Possession of an Instrument of Crime (18 § 907 §§ A), and Recklessly Endangering Another Person (18 § 2705 §§ A). A presentence investigation was prepared on November 14, 2014. On December 4, 2014, following a hearing, the Defendant was sentenced to three (3) to six (6) years of incarceration followed on the Aggravated Assault and Conspiracy charge, and no further penalty on the remaining charges.

Defendant filed a Post Sentence Motion for Reconsideration on December 12, 2014. Defendant's Motion for Reconsideration was denied by operation of law on April 10, 2015. Defendant filed a timely Notice of Appeal on May, 5, 2015. Defendant filed a Statement of Errors Complained of on Appeal on February 16, 2016.

1

## Factual History

On September 26, 2012, from around midnight until 2:30 a.m., Mr. Ventura Vasquez was in his house located at 1916 East Cambria Street, Philadelphia. N.T. 9/18/2014, pp. 15-16. Mr. Vasquez was staying at the house with his kids, a renter named Kristin Kubach, his fiancée Jessica Lovera, and the owner of the house Mr. Sneed. *Id.* at 16-17. Mr. Vasquez arrived at his home, immediately noticed the smell of gasoline, and began to argue with the landlord, Mr. Sneed, about the odor. *Id.* at 16-17. Mr. Sneed pushed Mr. Vasquez and Mr. Vasquez pushed him back. *Id.* at 29. While Mr. Vasquez argued with Mr. Sneed, Kristin Kubach joined the argument and began pushing Mr. Vasquez, telling him to stop fighting with Mr. Sneed. *Id.* at 18, 31. Ms. Kubach then left the property. *Id.* at 19. Ms. Jessica Lovera came down to the living room after Ms. Kubach left, because she was awakened by the fighting. *Id.* at 31.

Ms. Lovera and Mr. Vasquez stepped outside to the balcony. N.T. 9/18/2014, p. 31. Ms. Kubach returned ten minutes later with her brother, the Defendant, and Defendant's girlfriend, Helena Morales. *Id.* at 19-20. Defendant charged through the front door and said something about hitting women. *Id.* at 32. Mr. Vasquez testified the police were called, but Defendant, Ms. Morales, and Ms. Kubach left until the police were gone. *Id.* at 32. Mr. Vasquez testified Defendant, Ms. Morales, and Ms. Kubach returned. *Id.* at 32. Mr. Vasquez said he argued with and cursed at Defendant, then he attempted to move towards Defendant but tripped and landed on the couch next to him. *Id.* at 20. He further testified Defendant punched him, and he punched Defendant back once. *Id.* at 33. Mr. Vasquez testified that once he was on the couch Defendant, Ms. Morales, and Ms. Kubach started to punch and kick him. *Id.* at 21. Mr. Vasquez testified he was unable to get off the couch and was repeatedly punched in the face. *Id.* He said Ms. Morales struck him approximately twice. *Id.* at 34. After Ms. Morales hit Mr. Vasquez, she held him back for Defendant to continue punching him. *Id.* at 46. Ms. Lovera then pulled Ms. Morales off Mr.

2

Vasquez. *Id.* at 34. After Ms. Morales was removed from Mr. Vasquez, Defendant got on him and hit him in the face. *Id.* at 34. Mr. Vasquez then felt a hard object hit his head, but couldn't see what the object was. *Id.* at 22. Mr. Vasquez heard Ms. Kubach and Ms. Morales telling Defendant to keep hitting him. *Id.* at 39. At the preliminary hearing, Defendant testified he didn't remember the woman saying anything to Defendant during the altercation. *Id.* at 42. Mr. Vasquez became dazed by the strike of the hard object, but saw Defendant, Ms. Kubach, and Ms. Morales leave the property together. *Id.* at 22. Mr. Vasquez testified he didn't remember anything then until he arrived at the hospital. *Id.* at 23. He further testified he had a cheekbone fracture and needed stitches in his head as a result of this altercation. *Id.* at 21. Mr. Vasquez esxpressed he was in a lot of pain and needed a surgical procedure to fix his fractured cheekbone.

Mr. Vasquez drank two beers the night of the incident, but testified he was not drunk. N.T. 9/18/2014, p. 27. Mr. Vasquez also was prescribed Seroquil, but had not taken his dose that day. *Id.*

Ms. Jessica Lovera testified that on the night of the incident, she was awoken by the smell of gasoline and observed an argument between her fiancé, Mr. Vasquez, Mr. Sneed, and Ms. Kubach. *Id.* at 48. Ms. Lovera was on the porch with Ms. Vasquez when they saw Ms. Kubach approach the house in a car with Defendant and Ms. Morales. *Id.* at 50. Ms. Lovera testified she entered the house to avoid the group of people. *Id.* at 50. She further testified Defendant, Ms. Kubach, and Ms. Morales followed them inside the house. *Id.* Ms. Lovera testified she observed Defendant charge at Mr. Vasquez, and then pin Mr. Vasquez on the couch. *Id.* at 50. She further testified that Defendant, Ms. Morales, and Ms. Kubach all punched Mr. Vasquez. *Id.* at 51. Ms. Lovera pulled Ms. Morales off Mr. Vasquez, and then observed Ms. Kubach grab a wooden bat and use it to hit Mr. Vasquez on the left side of his face. *Id.* at 51. Ms. Lovera stopped Ms. Kubach

3

from striking Mr. Vasquez with the bat again. *Id.* at 52. Ms. Lovera prepared to fight Ms. Kubach in the corner, when Defendant got off Mr. Vasquez and told her he would hit women too. *Id.* at 52. Defendant, Ms. Kubach, and Ms. Morales grabbed the bat, left the property, and drove away in Defendant's car. *Id.* at 53. Ms. Lovera called the police and checked on Mr. Vasquez's injuries. *Id.* at 53. At a preliminary hearing, Ms. Lovera testified the bat belonged to Mr. Vasquez. *Id.* at 60. Ms. Lovera testified that she didn't observe any punches thrown before Mr. Vasquez fell onto the couch, just a tussle, but she observed Defendant punch Mr. Vasquez when he was on the couch. *Id.* at 62-63.

Counsel stipulated to medical records indicating: Mr. Vasquez had a one inch gash above his left forehead, bleeding was stopped by a bandage, and patient was positive for headache, nausea, vomiting, and loss of consciousness. *Id.* at 78. Mr. Vasquez was treated for a laceration on the left side of his forehead, a local anesthesia was administered, and fourteen sutures were applied to the wound to close it up. *Id.*

## Standard of Review

The standard of review applied to weight of the evidence is whether the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Brown*, 23 A.3d 544, 557-58 (Pa. Super. 2011). "A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Appellate review, therefore, is a review of the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Commonwealth v. Keaton*, 729 A.2d 529, 540 (Pa. 1999) (citing *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994)). The finder of fact is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Id.* (citing *Commonwealth v. Hawkins*, 701 A.2d 492, 501 (Pa. 1997)). In determining whether

4

this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. *Id.* at 541 (citing *Commonwealth v. Counterman*, 719 A.2d 284, 304 (Pa. 1998)).

The standard of review applied to reviewing the sufficiency of the evidence is "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super 2004). In applying this test, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. *Id.* In addition, the "Commonwealth need not preclude every possibility of innocence. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Kerry*, 906 A.2d 1237, 1240 (Pa. Super. 2006).

"When reviewing sentencing matters, [an appellate court] must accord the sentencing court great weight as it is in the best position to view defendant's character, displays or remorse, defiance or indifferences, and the overall nature of the crime." *Commonwealth v. Cappellini*, 690 A.2d 1220, 1225 (Pa. Super. 1997) (quoting *Commonwealth v. Viera*, 659 A.2d 1024, 1030 (Pa.Super. 1995). The sentencing function is vested in the sound discretion of the trial court, whose judgment will not be disturbed by an appellate court in the absence of an abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957, 962 (Pa. 2007).

## Discussion

Pursuant to the 1925(b) Statement of Errors Complained of on Appeal, the Defendant asserts the following arguments for appeal: (1) the Commonwealth's evidence was insufficient to

5

prove aggravated assault or conspiracy to commit simple assault, as there was insufficient evidence to prove Defendant was a principal, conspirator, or an accomplice; (2) the verdict was against the weight of the evidence; and (3) the Court abused its discretion in imposing an unduly harsh sentence.

I.  **There Was Sufficient Evidence To Sustain Defendant's Aggravated Assault and Conspiracy Convictions**

A. *There Was Sufficient Evidence of an Aggravated Assault and Simple Assault*

To obtain a conviction for Aggravated Assault, the Commonwealth must prove that the defendant attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. *Commonwealth v. Caterino*, 451 Pa. Super. 42, 45-46, 678 A.2d 389 (1996). Serious bodily injury is defined as any "bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. 2301. With regard to intent, "A person acts intentionally with respect to a material element of the offense when: (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result." *Commonwealth v. Sanders*, 426 Pa. Super. 362, 627 A.2d 183, 186 (1993). The intent to cause serious bodily harm may be shown by circumstances surrounding the incident. *Commonwealth v. Alexander*, 477 Pa. 190, 194, 383 A.2d 887, 889 (1978).

In the instant case, it is clear Mr. Vasquez was the victim of an Aggravated Assault. Defendant punched Mr. Vasquez in the face multiple times while Mr. Vasquez was pinned down on a couch. Mr. Vasquez was also punched repeatedly by Ms. Morales and Ms. Kubach. Beyond these several punches to the face, Ms. Kubach struck Mr. Vasquez in the side of the head with a wooden bat. It is clear that Defendant's actions were executed with the intent to cause a serious

6

bodily injury. Defendant punched Mr. Vasquez in the face multiple times, while holding him down, rendering him unable to protect himself. Mr. Vasquez became disoriented, lost consciousness, and required surgery for the gash on his forehead. There is sufficient circumstantial evidence that Defendant acted with the intent to cause protracted impairment or disfigurement to the several sensitive bodily members on Mr. Vasquez face, including his eyes and nose.

Beyond this, as Defendant acted in a conspiracy with Ms. Kubach, he is criminally liable for all of Ms. Kubach's actions in furtherance of the conspiracy, as discussed *infra*. Ms. Kubach's actions clearly rose to aggravated assault when she struck Mr. Vasquez in the side of his head, near his ears and eyes, with a wooden bat.

### B. *Defendant Participated in a Conspiracy with Ms. Kubach*

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) and overt act was done in furtherance of the conspiracy." *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000). "The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators, sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

7

Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy." *Commonwealth v. Knox*, 50 A.3d 749, 755 (Pa. Super. 2012).

The circumstances surrounding the Assault of Mr. Vasquez sufficiently prove Defendant entered into a conspiracy with Ms. Kubach and Ms. Morales. The scenario began with Ms. Kubach arguing with Mr. Vasquez by herself in the property. Ms. Kubach then left the property and returned with her brother, Defendant, and Ms. Morales, Defendant's girlfriend. Defendant and the two women all drove to the property together, entered the house together, fought together, and subsequently left together. While fighting, Ms. Morales also held Mr. Vasquez down, and both her and Ms. Kubach encouraged Defendant to continue punching Mr. Vasquez. These circumstances clearly indicate that Ms. Kubach returned to the house with the criminal intent to assault Mr. Vasquez. It is also clear that Defendant was aware and agreed to commit this unlawful act of assaulting Mr. Vasquez before even entering the property. Defendant, Ms. Kubach, and Ms. Morales all took steps in furtherance of the conspiracy when they punched Mr. Vasquez, held him down, and struck him with a bat. The circumstances of the assault make it clear this was not a scenario where two people were engaged in an altercation and the others merely joined in the affray, the parties clearly intended to act together in furtherance of the assault.

## II. The Verdict Was Not Against The Weight Of The Evidence.

An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Brown*, 648 A.2d 1177 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Thompson v. City of Philadelphia*, 493 A.2d 669, 673 (Pa. 1985).

In the instant case, the weight of the evidence was not contrary to the Courts finding of guilt. The Court was given ample opportunity to review the evidence from both Defendant and the Commonwealth before making a decision. The Court gave great weight to the testimony of Mr. Vasquez and Ms. Lovera and found their testimony to be credible. Any discrepancies in testimony are minor and are easily explained by the speed and the rapid acceleration of the altercation. Mr. Vasquez admitted to drinking the night of the incident, but insisted he was not intoxicated. The inconsistent testimony as to the wooden bat's ownership is not only minor but also not relevant to the trial. Though Mr. Vasquez testified the bat belonged to Mr. Sneed, he didn't testify that the Defendant or his co-conspirators brought it with them. Ms. Lovera testified she didn't recall who the bat belonged to, and later testified it belonged to her husband. These statements were not made in the self-interest of the witnesses, but can merely be attributed to issues of recollection and memory.

### III. Defendant's Sentence for Aggravated Assault was Appropriate

"While it is true that [our superior] court and our supreme court have the power and responsibility to vacate a sentence determined to be so manifestly excessive as to constitute too severe a punishment, it is insufficient to simply assert an unduly harsh sentence; the record must show it." *Commonwealth v. De Luca*, 418 A.2d 669, 671 (Pa. Super. 1980) (citing *Commonwealth v. Martin*, 351 A.2d 650 (Pa. 1976)). In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion. *Commonwealth v. Pickering*, 533 A.2d 735, 738 (Pa. Super. 1987).

The Court fashioned a sentence which took into account the need to protect the public from the defendant, the rehabilitative needs of the defendant, and the gravity of the particular offenses

9

as it relates to the impact on the citizens of Philadelphia. *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002) (quoting *Commonwealth v. Burkholder*, 719 A.2d 346, 350 (Pa. Super. 1998)). "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself... Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

Defendant was sentenced to forty two (42) to eighty four two (84) months incarceration on both the first-degree felony Aggravated Assault charge and the second-degree misdemeanor Conspiracy to commit Simple Assault charge, concurrent to each other, with no further penalty on all other convictions. Defendant had a prior record score of zero. The offense gravity score for the Aggravated Assault charge was eleven (11) with a guideline range of thirty six (36) to fifty four (54) months plus or minus twelve (12) months, with a maximum sentence of twenty (20) years. The Court clearly imposed a sentence within the guideline, sentencing Defendant to a minimum of forty two (42) months incarceration, squarely within the guideline range of thirty six (36) to fifty four (54) months. As this sentence falls within the guidelines it is clearly not manifestly excessive. The Court took into consideration the Defendant's Pre-Sentence

Investigation Report, remorse, and family support, but determined a standard period of incarceration would best serve the community.

## IV. Defendant's Sentence for Simple Assault was Illegal and Should be Remanded for Resentencing

Defendant was sentenced to three years and six months to seven years' incarceration for the second-degree misdemeanor Conspiracy to commit Simple Assault. The statutory maximum incarceration sentence for a second-degree misdemeanor is two years. Although this sentence runs concurrent to a legal sentence on Aggravated Assault, it exceeds the statutory maximum and must be remanded for resentencing.

## Conclusion

For the foregoing reasons, it is respectfully requested that the Trial Court's determination of guilt be affirmed and sentence be remanded to correct the illegal sentence on the simple assault conviction.

BY THIS COURT:

Roxanne E. Covington, J.
August 3, 2016

11