J-S44023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IFEANY J. OKORAFOR | : | |
| | : | |
| Appellant | : | No. 2644 EDA 2016 |

Appeal from the Judgment of Sentence April 10, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014915-2012

BEFORE: LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                              **FILED AUGUST 24, 2018**

Ifeany J. Okorafor (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of indecent assault of a child less than 13 years of age.[1]  We affirm.

The trial court summarized the testimony of the victim and her mother as follows:

> The victim in this case, J.O., is [Appellant]'s daughter.  For approximately two years beginning when J.O. was seven years old, [Appellant] repeatedly sexually abused her.  At the time of the abuse, J.O. lived with her mother and three brothers in a two-bedroom apartment in Philadelphia.  Although her mother and [Appellant] had separated in 2009 following a volatile relationship, [Appellant] would still occasionally spend the night at the apartment and supervise the children while J.O.'s mother was at work.  N.T., 8/6/14, [at] 114, 117-18.
>
> [Appellant] molested his daughter approximately ten times.  The assaults would happen when [J.O.'s] mother was at work and

---

[1] 18 Pa.C.S.A. § 3126(a)(7).

her brothers were sleeping. [Appellant] would lead J.O. into her mother's bedroom, take off her pants, and touch her vagina with his hands and/or his mouth. He also, on repeated occasions, led J.O. into the bathroom where he would take his penis out of his boxers, rub soap on it, and put the victim's hand on his testicles until he ejaculated. *Id*. at 66-67.

J.O. first told her mother about the abuse when she was in third grade. Her mother confronted [Appellant] with J.O.'s accusations, but he denied assaulting her. Her mother did not call the police because she was not sure whether it had happened. The assaults continued, and [Appellant] asked J.O. – as he was touching her vagina – why she told on him. *Id.* at 74, 120-121.

The final incident happened in September[] 2012, when J.O. was nine years old. [Appellant] woke J.O. up after her mother had left for work. He led her by the hand into her mother's bedroom and directed her onto her back on her mother's bed. [Appellant] took off J.O.'s pajama shorts and underwear and touched her vagina with his hands. He also put his mouth on her vagina. [Appellant] then led her to the bathroom, where she sat on the edge of the tub. [Appellant] stood at the sink with his pants down and his penis protruding through his boxers. He took a bar of soap and rubbed it on his penis. He then took J.O.'s hand and put it up the leg of his boxers to his testicles. J.O. saw [Appellant] ejaculate. [Appellant] led J.O. back to her mother's room and onto the bed. He covered her face with the blanket. As she lay there with her pants down and her legs open, J.O. heard the click of a camera two times. After [Appellant] left the apartment, J.O. called her mother crying. Her mother called the police when she came home from work. *Id.* at 51-55, 57-60, 62-64, 76, 125-26.

Trial Court Opinion, 8/8/17, at 1-2.

Appellant was charged with involuntary deviate sexual intercourse (IDSI), unlawful contact with a minor, corruption of a minor, and indecent assault of a child less than 13 years of age. On August 11, 2014, a jury found Appellant guilty of indecent assault of a child less than 13 years of age and acquitted him of all remaining charges.

- 2 -

Following his conviction, the trial court deferred sentencing for purposes of a pre-sentence investigation and evaluation by the Sexual Offenders Assessment Board. Ultimately, after a hearing, the trial court determined that Appellant was not a sexually violent predator. On April 10, 2015, the trial court sentenced Appellant to 11½ to 23 months of incarceration with immediate parole to house arrest, followed by three years of probation. Appellant did not file any post-sentence motions or a direct appeal.

On October 1, 2015, Appellant filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. On March 3, 2016, Appellant filed an amended PCRA petition seeking reinstatement of his right to file post-sentence motions and a direct appeal *nunc pro tunc*. On July 13, 2016, following the filing of a second amended petition and a hearing, the trial court granted Appellant's petition and reinstated his right to file a direct appeal *nunc pro tunc*. On July 25, 2016, Appellant filed a motion seeking permission to raise an ineffective assistance of counsel claim on direct appeal, and asserted that his trial counsel was ineffective for failing to advise him of the immigration consequences of his conviction under ***Padilla v. Kentucky***, 559 U.S. 356 (2010), on direct appeal. On August 10, 2016, the trial court denied his motion seeking to raise his ineffectiveness claim on direct appeal. Appellant timely filed a direct appeal from his judgment of sentence and the order denying his request to raise an ineffective assistance of counsel claim on direct appeal.

On appeal, Appellant presents ten issues for review:

1.     Did the [t]rial [c]ourt err and abuse its discretion in granting the Commonwealth's [p]rior [b]ad [a]cts motion, where the Commonwealth did not establish that it provided reasonable notice and where the evidence had little, if any, probative value but was significantly prejudicial?

2.     Did the trial court err and abuse its discretion in allowing amendment of the bills of information on the eve of trial, where the amendment added an additional two years of liability, where the Commonwealth failed to establish that [Appellant] was fully apprised of the factual scenario supporting the charges (an especially egregious omission where [Appellant] spared the complainant the need to testify at a preliminary hearing), where two years' worth of additional facts necessitated a significant change in defense strategy, and where the Commonwealth did not establish that it had provided ample notice and [Appellant] was prejudiced thereby?

3.     Was the evidence insufficient to support [Appellant]'s conviction, where the Commonwealth did not establish beyond a reasonable doubt the alleged purpose of the alleged acts, and where the complainant's testimony was so non-credible that it cannot support a conviction beyond a reasonable doubt? Did the trial court err in denying [Appellant]'s motion in arrest of judgment, styled as a motion for extraordinary relief, where inconsistent verdicts are allowed when the evidence is sufficient to support them, a circumstance that is absent in the present case?

4.     Did the trial court err and exceed its authority by using a special verdict sheet, with special interrogatories allowing the jury to make yes or no determinations as to course of conduct, and magnify the deleterious impact of its error by omitting the "beyond a reasonable doubt" standard, thereby allowing the jury to make a specific finding of an element of a crime by a lesser evidentiary standard, in violation of the due process guarantees of the Pennsylvania and United States [C]onstitutions?

5.     Did the trial court err in failing to declare a mistrial after the jury twice announced that it could not reach a verdict, and in instead giving a charge under *Commonwealth v. Spencer*, 275 A.2d 299 (Pa. 1971)?

6. Should the verdict be struck as repugnant to justice and violating the due process clauses of the Pennsylvania and United States [C]onstitutions, where there is evidence indicating that the jury reached its verdict by applying a lesser standard than "beyond a reasonable doubt"?

7. Did the trial court err in denying [Appellant]'s motion to raise ineffectiveness claims on direct appeal, pursuant to **Commonwealth v. Holmes**, 79 A.3d 562, 578 (Pa. 2013)?

8. Did the Commonwealth violate its obligations under **Brady v. Maryland**, 373 U.S. 83 (1963), by failing to turn over in discovery any exonerating materials relating to its search of [Appellant]'s electronics, including his cellular phone, a violation that was exacerbated to [Appellant]'s prejudice when the Commonwealth stated in its opening argument that certain alleged photographs he was supposed to have taken of the complainant were "gone at that point [of the search]"?

9. Did the Commonwealth engage in inappropriate and suggestive interviewing techniques with the minor complainant, techniques (such as repeat interviews in a short period of time on the same day, with suggestive, closed-ended rather than open-ended questioning) that are at direct odds with best practices for forensic interviewing of minor victims and witnesses, and as a result, should the evidence tainted thereby have been excluded?

10. Did the trial court err and abuse its discretion by allowing the Commonwealth's DNA expert to testify as to the alleged presence of a Y chromosome in the complainant's underpants, where those underpants had been kept in a common laundry hamper with the dirty clothes of multiple male relatives, where the evidence was more prejudicial than probative, where the Commonwealth provided woefully insufficient notice, and thus, regardless of the Commonwealth's intentions, the result of admission of this testimony was trial by ambush; **see** N.T. 8.7.14, pp. 8-11; **see also** Commw. Exh. 7, excluding [Appellant] as a source of the DNA detected in the sample in question?

Appellant's Brief at 5-6.

- 5 -

First, Appellant argues that the trial court erred in permitting the Commonwealth to introduce evidence that Appellant physically abused the victim's mother. Appellant contends that the evidence of his acts of physical abuse upon the victim's mother do not rise to the severity of those observed in **Commonwealth v. Dillon**, 925 A.2d 131 (Pa. 2007), and thus, the trial court should not have admitted the evidence. Appellant further asserts that the Commonwealth did not provide him with reasonable notice of its intent to introduce this prior bad acts evidence.

Our standard of review is as follows:

> It is well settled that the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Hicks**, 151 A.3d 216, 224 (Pa. Super. 2016) (quotations, citations and brackets omitted), **appeal denied**, 168 A.3d 1287 (Pa. 2017).

As our Supreme Court has explained, generally, "all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility." **Dillon**, 925 A.2d at 136. An exception to this rule is that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person

acted in accordance with the character." Pa.R.Evid. 404(b)(1). Evidence of an uncharged crime, however, may be admissible for a purpose other than to show criminal propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.Evid. 404(b)(2). "This list is not exhaustive[,]" as the Supreme Court of Pennsylvania has recognized that one permissible purpose of such evidence is "to furnish the context or complete story of the events surrounding a crime[,]" *i.e.*, the *res gestae* exception. ***Dillon***, 925 A.2d at 137.

Even where an exception to Rule 404(b)'s prohibition against evidence of prior bad acts applies, the evidence of other crimes is admissible "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.Evid. 404(b)(2). "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.Evid. 403 (comment).

In ***Dillon***, the defendant was convicted of sexually assaulting a child "for nearly four years between 1995 and 1998[.]" ***Dillon***, 925 A.2d at 133. These sexual assaults, however, went unreported until 2001. ***Id.*** At trial, the Commonwealth introduced evidence that the defendant had physically abused the victim's mother and brother to explain the victim's delay in reporting the sexual abuse. ***Id.***

On appeal, the Supreme Court held that it was permissible under Rule 404(b) for the Commonwealth to introduce evidence that the defendant physically abused family members of the victim. *Id.* at 136-42. Specifically, the Court determined that the evidence was "relevant for purposes other than to show [Dillon's] bad character and criminal propensity." *Id.* at 139. In reaching this conclusion, our Supreme Court in **Dillon** recognized that under Section 3105 of the Crimes Code, "[a] jury may consider evidence of a lack of prompt complaint in cases involving sexual offenses." *Id.* at 137. The Supreme Court explained:

> Section 3105 codified a common law principle recognizing that the victim of a sexual assault naturally would be expected to complain of the assault at the first safe opportunity. . . . Generally, there are three principles upon which evidence addressing the timeliness of a sexual assault complaint has been deemed relevant and admissible: (1) as an explanation of an inconsistency/silence; (2) as corroboration of similar statements; or (3) as a *res gestae* declaration.

*Id.* (citing 18 Pa.C.S.A. § 3105).

> Furthermore:

> [B]oth the common law experience and the judgment of the General Assembly have led to a recognition of the relevance of the promptness of a complaint of sexual abuse, and this Court has separately recognized the reality that a sexual assault prosecution oftentimes depends predominately on the victim's credibility, which is obviously affected by any delay in reporting the abuse. Revealing the circumstances surrounding an incident of sexual abuse, and the reasons for the delay, enables the factfinder to more accurately assess the victim's credibility. Moreover, this Court has acknowledged that juries in sexual assault cases expect to hear certain kinds of evidence and, without any reference to such evidence during the trial, a jury is likely to unfairly penalize the Commonwealth, the party with the burden of proof.

*Id.* at 138–39 (citations omitted).

Based on this reasoning, our Supreme Court in *Dillon* concluded that the evidence: (1) "tend[ed] to show that [the victim's] experiences with [Dillon], including those assaults on family members, caused her to fear making a prompt report"; and (2) was "relevant for *res gestae* purposes, *i.e.*, to explain the events surrounding the sexual assaults." *Id.* at 139

Lastly, the Court stated:

Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial.

*Id.* at 141 (quotations and citations omitted). The Court noted, however, that the trial court must "carefully tailor[ ] how and to what degree evidence of the reasons for [the victim's] delayed report is introduced at trial" and must give limiting instructions. *Id.*

In this case, the trial court determined that the evidence of Appellant's physical abuse of J.O.'s mother "was relevant to explain the victim's hesitancy and delay in reporting that [Appellant] was abusing her." Trial Court Opinion, 8/8/17, at 4. We agree. J.O. testified that while Appellant did not physically abuse her mother in J.O.'s presence, she was home when the abuse occurred and heard the yelling and physical struggle. N.T., 8/6/14, at 77-78. J.O.

stated that she also watched as the police removed Appellant from the home and saw her mother's black eye. *Id.* at 77, 79-80. J.O. testified that this incident made her "scared." *Id.* at 80.

Given the discretionary nature of evidentiary claims, we cannot say in this instance that the trial court abused its discretion in admitting the evidence of Appellant's abuse of J.O.'s mother. Although it was only one instance of abuse, J.O. specifically testified that the incident, which included arguing between her mother and Appellant, her mother getting a black eye from Appellant, and the police arresting Appellant – all of which occurred while J.O. was in the home – made her afraid. Thus, the evidence of Appellant's physical abuse of J.O.'s mother served a purpose beyond demonstrating Appellant's bad character and criminal propensity, *i.e.*, the approximately three-year gap between when Appellant began sexually assaulting J.O. and when her mother contacted the police. *See Dillon*, 925 A.2d at 136-42. The evidence demonstrated that both J.O. and her mother had reason to fear Appellant. Because the Commonwealth's case was largely based on J.O. and her mother's credibility, the probative value of the evidence outweighed any prejudicial effect. *See id.* Moreover, as our Supreme Court instructed in *Dillon*, the trial court provided the jury with a limiting instruction that they "must not regard this evidence as showing that [Appellant] is a person of bad character or criminal tendencies[.]" N.T., 8/8/14, at 12. Accordingly, we conclude that the trial court did not err in admitting this evidence.

To the extent Appellant argues that the Commonwealth did not provide him with reasonable notice of its intent to introduce this prior bad acts evidence, this argument does not warrant relief. The record reflects that on March 24, 2014, more than four months prior to Appellant's trial, the Commonwealth filed a motion in which it sought permission to introduce evidence of Appellant's physical abuse of J.O.'s mother. Therefore, Appellant had ample opportunity to prepare for and contest the introduction of this evidence.

Second, Appellant argues that the trial court abused its discretion in permitting the Commonwealth to amend the Criminal Information the day before his trial. Appellant takes issue with the amendments changing the statutory subsection under which he was charged for IDSI and changing the offense dates from September 2012 to September 2010 through 2012. With respect to the amending of the offense dates, Appellant asserts that the short notice he received informing him that he would have to account for two years' worth of liability prevented him from preparing an appropriate defense for that time period.

When presented with a question concerning the propriety of an amendment of the criminal information, we consider:

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of

events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Commonwealth v. Beck*, 78 A.3d 656, 660 (Pa. Super. 2013) (quotations and citations omitted).

Furthermore,

[i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Id.* (quotations and citations omitted).

Courts must consider the following factors in determining whether an amendment is prejudicial:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id.* (quotations and citations omitted).

With respect to the amendment of the IDSI charge, we note that the jury acquitted Appellant of IDSI. Thus, Appellant plainly was not prejudiced by the amendment to that charge.

Regarding the amendments to the dates of the offenses, while the Commonwealth did request these amendments the day before Appellant's trial, the record reveals that the Commonwealth provided ample notice to Appellant that it intended to prosecute him for sexual misconduct that allegedly occurred over the course of two years. The affidavit of probable cause for Appellant's arrest warrant, the criminal complaint, and the Commonwealth's motion to admit evidence of other crimes, wrongs, or acts each indicate that Appellant was charged in relation to allegations of sexual misconduct that occurred between September 2010 and September 2012. *See* Affidavit of Probable Cause, 9/6/12, at 2; Criminal Complaint, 9/6/12, at 2; Motion to Admit Other Crimes, Wrongs, or Acts Pursuant to Rule 404(b), 3/24/14. Appellant's claim that he was somehow unaware that the Commonwealth was prosecuting him for conduct that occurred over the course of those two years, and consequently prejudiced in preparing his defense, is belied by the record. Accordingly, we conclude that the trial court did not abuse its discretion in permitting the Commonwealth to amend the Criminal Information.

Third, Appellant argues that the evidence was insufficient to sustain his indecent assault conviction. Additionally, Appellant asserts that the inconsistent verdicts in this case and the unreliable testimony of J.O. and her mother resulted in a verdict that could only be the product of surmise and conjecture.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." ***Commonwealth v. Ramtahal***, 33 A.3d 602, 607 (Pa. 2011).

Under Section 3126 of the Crimes Code:

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the

- 14 -

complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant[.]

18 Pa.C.S.A. § 3126(a). Section 3101 defines "indecent contact" as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

The trial court explained:

Here, the victim testified that on approximately ten occasions between the time she was seven and nine years old, and specifically, on or about September 4, 2012, [Appellant] would lead her into her mother's bedroom in the early morning hours, when her mother was at work and her brothers were asleep, remove her clothing, and touch her vagina with his hands and mouth. N.T., 8/6/14, [at] 52-55. She further testified that [Appellant] would then take the victim to the bathroom, where he would masturbate in front of her and place her hand on his testicles while doing so, until he ejaculated. *Id.* 58-60. The very nature of this contact – [Appellant] both touching the victim's genitalia and requiring her touch his – was itself circumstantial evidence that [Appellant] was acting with purpose of arousing or gratifying his sexual desire.

Trial Court Opinion, 8/8/17, at 7.

Based on review of the certified record, including the transcripts of J.O.'s testimony, and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court's conclusion that the Commonwealth presented sufficient evidence to sustain Appellant's conviction of indecent assault. Additionally, Appellant's claim that the verdicts were inconsistent does not entitle him to relief. Our Supreme Court has stated that inconsistent verdicts "are allowed to stand so long as

- 15 -

the evidence is sufficient to support the conviction." ***Commonwealth v. Miller***, 35 A.3d 1206, 1208 (Pa. 2012).

Lastly, Appellant's challenge to the credibility of J.O.'s and her mother's testimony is likewise meritless. This Court has consistently held that "credibility determinations are made by the fact finder and that challenges thereto go to the weight, and not the sufficiency, of the evidence." ***Commonwealth v. Gaskins***, 692 A.2d 224, 227 (Pa. Super. 1997); ***see also Commonwealth v. Gibbs***, 981 A.2d 274, 281-82 (Pa. Super. 2009) ("An argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence."). Appellant has not raised or preserved a challenge to the weight of the evidence. Accordingly, Appellant's third issue does not entitle him to relief.

Fourth, Appellant argues that the trial court erred in using an improper verdict form. While Appellant's argument is convoluted and difficult to understand, he appears to assert that the trial court improperly asked the jury, in the event they found Appellant guilty of indecent assault, whether they also found that there was a course of conduct associated with Appellant's actions.

Appellant has waived this claim by failing to preserve it before the trial court. Rule 647 of the Pennsylvania Rules of Criminal Procedure states that "[n]o portions of the charge nor omissions from the charge may be assigned

as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(c); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). The record reveals no objection to the jury charge before they retired to deliberate. *See* N.T., 8/8/14, at 29-30. Appellant also concedes that he failed to preserve this issue for review. Appellant's Brief at 58. Because Appellant never objected to the jury charge, he has not preserved this issue for appeal.

Even if Appellant had preserved this issue for appeal, it would not warrant relief. The trial court instructed the jury, in pertinent part, as follows:

> If you find that [the elements of indecent assault] have been proven beyond a reasonable doubt you should find [Appellant guilty. If you do so find you should indicate on the verdict form whether you also find the following elements proven beyond a reasonable doubt:
>
> There has been a course of conduct of indecent assault by the person.

*Id.* at 24-25. Not only does this jury instruction mirror the Pennsylvania Suggested Standard Jury Instruction for indecent assault of a child,[2] but the

---

[2] The Pennsylvania Suggested Standard Jury Instruction for indecent assault of a child provides, in relevant part, as follows:

> 2. If you find that [the elements of indecent assault of a child] have been proven beyond a reasonable doubt, you should find the defendant guilty. If you do so find, you should indicate on the verdict form whether you also find the following element[s] proven beyond a reasonable doubt:

portion of the instruction relating to Appellant's course of conduct was necessary for determining the grading of the offense. *See* Pa.C.S.A. § 3126(b)(3)(ii) ("An offense under subsection (a)(7) is a misdemeanor of the first degree unless any of the following apply, in which case it is a felony of the third degree: . . . [t]here has been a course of conduct of indecent assault by the person."). Accordingly, Appellant's fourth issue is meritless.

Fifth, Appellant argues that the trial court erred in failing to declare a mistrial after the jury twice announced that it could not reach a verdict and instead gave the jury a charge pursuant to ***Commonwealth v. Spencer***, 275 A.2d 299 (Pa. 1971). Appellant has once again failed to preserve this issue for review by raising before the trial court. *See* Pa.R.A.P. 302(a). The record reveals no objection the trial court's *Spencer* charge to the jury. *See* N.T., 8/11/14, at 4-6. Appellant concedes that he has not preserved this issue. Appellant's Brief at 59.

Even if the issue was preserved for appeal, it would not merit relief. In ***Spencer***, our Supreme Court held that "a conviction will be reversed if the jury's verdict was effectively coerced by the trial judge's charge[.]" ***Spencer***, 275 A.2d at 303. A trial court's charge to a jury that is unable to reach a

---

      a.    There has been a course of conduct of indecent assault by the person.

Pa.S.S.J.I. (Criminal) § 15.3126C.

verdict is improper where the charge instructs: "(1) a minority juror should yield to the majority; and (2) those with no reasonable doubt, *i.e.*, the majority, need not re-examine their position despite the existence of a reasonable doubt in the mind of a minority juror." ***Id.*** at 303-04.

We agree with the trial court's assessment that the charge did not result in a coerced verdict,[3] and that "the court followed the standard set forth in

_____

[3] The trial court instructed the jury as follows:

Getting a verdict in this case is a matter of extreme importance to the [c]ourt, the Commonwealth, and [Appellant]. And of course it would be considerable time, expense, and anxiety for everyone concerned should I need to declare a mistrial and start this trial all over again from day one. And that is what will happen if you do not return a verdict.

Nevertheless, no juror should surrender an honest conviction as to the weight or effect of the evidence solely because of the opinion of fellow jurors or for the mere purpose of returning a verdict.

However, please bear in mind that jurors have a duty to consult with one another and deliberate with a view to reaching an agreement if it can be done without violence of individual judgment.

Each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence with fellow jurors. In order to return a verdict each juror must agree, your verdict must be unanimous.

Remember also in the course of deliberation a juror should not hesitate to raise that and revisit his or her own views or change his or her own opinion if convinced it is erroneous.

N.T., 8/11/14, at 4-6.

[**Spencer**], urging the jurors to keep an open mind toward their fellow jurors' viewpoints without abandoning their own." Trial Court Opinion, 8/8/17, at 10. Because the charge contains none of the elements prohibited by **Spencer**, Appellant's fifth issue is meritless.

Sixth, Appellant argues that the trial court erred in permitting the jury to apply a lesser standard than "beyond a reasonable doubt" when deciding Appellant's case. Appellant asserts that this Court should remand this case for an evidentiary hearing regarding the burden of proof the jury used in reaching its verdict.

This argument is meritless for several reasons. Appellant provides no explanation as to why he believes that the jury applied a lesser standard than "beyond a reasonable doubt." He points to no record support for his claim. The record is replete, however, with examples of the trial court instructing the jury to apply a "beyond a reasonable doubt" standard in reaching its verdict. **See, e.g.**, N.T., 8/8/14, at 6-8 ("The Commonwealth . . . has the burden of proving each and every element of the crime charged and that [Appellant] is guilty of that crime beyond a reasonable doubt. . . . If after careful and impartial consideration of all of the evidence in this case you have a reasonable doubt that [Appellant] is guilty of the charge, you should find [Appellant] not guilty."). "The law presumes that the jury will follow the instructions of the court." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1184 (Pa. 2011). Moreover, during deliberations, the jury also requested that the trial court

read to them the definition of "reasonable doubt," demonstrating that they understood the appropriate burden of proof. *See* N.T., 8/8/14, at 32. Accordingly, Appellant's sixth issue does not entitle him to relief.

Seventh, Appellant argues that the trial court erred in denying his motion seeking to raise an ineffective assistance of counsel claim on direct appeal pursuant to our Supreme Court's decision in *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013). *Holmes* addressed the circumstances in which a criminal defendant may raise claims of ineffective assistance of counsel on direct appeal. This Court in *Commonwealth v. Knox*, 165 A.3d 925 (Pa. Super. 2017), *appeal denied*, 173 A.3d 257 (Pa. 2017), explained the *Holmes* decision as follows:

> Generally, claims of ineffectiveness of counsel are not ripe until collateral review. *See* [*Holmes*, 79 A.3d at 576]. However, in extraordinary cases where the trial court determines that the claim of ineffectiveness is "both meritorious and apparent from the record," it may exercise its discretion to consider the claim in a post-sentence motion. *Id.* at 577.
>
> In *Holmes*, the Supreme Court of Pennsylvania explicitly identified ineffectiveness claims as "presumptively reserved for collateral attack[.]" *Id.* at 577 n.10. The Court warned against trial courts appointing "new counsel post-verdict to search for ineffectiveness claims." *Id*. Thus, while the trial court retains discretion in addressing such claims, the presumption weighs heavily in favor of deferring such claims to collateral review.
>
> Further, the Court justified the creation of the "meritorious and apparent from the record" exception by explaining that "[t]he administration of criminal justice is better served by allowing trial judges to retain **the discretion** to consider and vindicate such distinct claims of ineffectiveness[.]" *Id.* at 577 (emphasis added).

*Id.* at 928.

- 21 -

Appellant argues that he has a valid ineffective assistance of counsel claim under the United States Supreme Court's **Padilla** decision. In **Padilla**, the United States Supreme Court held that when a criminal defendant intends to plead guilty to a crime, "counsel must inform her client whether his plea carries a risk of deportation." **Padilla**, 559 U.S. at 374. Although he did not plead guilty in this case, Appellant argues that his trial counsel should have negotiated a plea agreement that precluded his deportation rather than allowing him to proceed to trial. We have been unable to find any authority from this Court or our Supreme Court applying **Padilla** in this context, and Appellant does not cite any such authority. Appellant asserts, however, that **Padilla** is applicable to this case based on **Lafler v. Cooper**, 566 U.S. 156 (2012). Even assuming **Padilla** is applicable here, Appellant is not entitled to relief.

In **Lafler**, the United States Supreme Court explained that to meet the prejudice prong of the ineffectiveness test[4] where the alleged ineffectiveness

_____

[4] In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. **Commonwealth v. Bomar**, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." **Id.** (citation omitted). To demonstrate prejudice in an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

- 22 -

of counsel involves a defendant's decision to proceed to trial, the defendant

must show:

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164. The Court cautioned, however, "[i]f no plea offer is

made . . . the issue raised here simply does not arise." *Id.* at 168.

In this case, the trial court determined that Appellant's claim was not

meritorious. We agree. The trial court, which accurately summarized

Appellant's testimony, explained:

> [Appellant] did not enter a plea . . . nor did he waive any of his rights to a jury trial. Moreover, he testified at the evidentiary hearing – having since been made fully aware of the immigration consequences of his conviction, - that it was his decision to proceed to a jury trial, that he did not want to plead guilty, and that *he would never have considered an offer to plead guilty*. N.T., 5/16/16, [at] 78-79.

Trial Court Opinion, 8/8/17, at 12 (emphasis in original). Because there was

never a plea offer, and Appellant stated he would not have considered a plea

offer, neither *Padilla* nor *Lafler* are applicable. Thus, Appellant has not

presented an ineffectiveness claim that is "meritorious and apparent from the

---

different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. *Bomar*, 104 A.3d at 1188.

record." ***Holmes***, ***supra***. Accordingly, the trial court did not err in denying his motion raise this claim on direct appeal.

Eighth, Appellant argues that the Commonwealth committed a ***Brady*** violation. Specifically, Appellant argues that the Commonwealth failed to disclose evidence relating to the search of Appellant's cellphone for inappropriate photographs of J.O. Although the parties stipulated there were no such photographs on Appellant's phone, he insists that the Commonwealth withheld evidence proving that not only were there no inappropriate photos on his phone, but also that he never took and subsequently deleted those photos.

In rejecting this claim, the trial court explained:

"[T]o establish a ***Brady*** violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." ***Commonwealth v. Robinson***, 122 A.3d 367, 373 (Pa. Super. 2015), ***appeal denied***, 130 A.3d 1289 (Pa. 2015). Moreover, "the withheld evidence must have been in the exclusive control of the prosecution at the time of trial." ***Id.*** Importantly, the underlying premise in all ***Brady*** violations is that the evidence actually exists. ***Commonwealth v. Lawrence***, [165 A.3d 34, 47 (Pa. Super. 2017)].

The record indicates that the Commonwealth turned over all existing discovery relating to the search of [Appellant]'s electronics. There is no motion for discovery and no objection by counsel as to the Commonwealth's reference to the search of [Appellant]'s electronics. Moreover, the parties *stipulated* that the electronics were sent to a laboratory and that the laboratory "did not find images of [the victim] . . ." N.T., 8/7/14, [at] 102. To the extent that [Appellant] claims the Commonwealth withheld additional evidence that would have shown that [Appellant] never

- 24 -

had photographs of the victim, such [a] claim seems to be premised only on a belief that such evidence exists. This is insufficient to establish a ***Brady*** violation.

Trial Court Opinion, 8/8/17, at 13 (emphasis in original).

Based upon our review of the certified record, and the applicable case law cited by the trial court, Appellant, and the Commonwealth, we conclude that the trial court properly analyzed and disposed of this issue. The parties stipulated that the laboratory found no images of J.O. on Appellant's phone. The record contains no support for Appellant's claim that any additional evidence exists relating to his phone or whether he took inappropriate photographs of J.O. At best, Appellant's ***Brady*** claim is based on speculation. Accordingly, Appellant's eighth issue is meritless.

Ninth, Appellant argues that the police engaged in inappropriate and suggestive interviewing techniques when they took J.O.'s statement. Consequently, he asserts that the trial court should have excluded evidence of the statement because it was more prejudicial than probative.

Appellant has not preserved this issue for appeal. As the trial court points out, Appellant never moved for the exclusion of this evidence. Appellant once again readily concedes that he did not object to the admission of this evidence. Appellant's Brief at 59. Therefore, Appellant has waived this issue. ***See*** Pa.R.A.P. 302(a). Even if Appellant had preserved this issue for review, it would not entitle him to relief. As the Commonwealth points out, Appellant had ample opportunity at trial to cross-examine both J.O. and the

police officer who took the statement. *See* N.T., 8/6/14, at 84-107; N.T., 8/7/14, at 88-95. Accordingly, Appellant's ninth issue is meritless.

Finally, Appellant argues that the trial court abused its discretion by allowing the Commonwealth's DNA expert to testify regarding the presence of male DNA in J.O.'s undergarments. Appellant contends that the expert testimony was more prejudicial than probative because the expert testified that there was male DNA found in J.O.'s undergarments, but could not identify the source. Appellant argues that by not identifying the source, the testimony created the implication that it was Appellant's DNA. Appellant further asserts that he did not receive sufficient notice of the Commonwealth's intent to introduce this expert testimony.

With respect to his argument that the expert testimony was more prejudicial than probative, Appellant has once again not preserved this issue for review, as he raises it for the first time on appeal. *See* Pa.R.A.P. 302(a). Appellant even concedes that he did not preserve this argument for appeal. Appellant's Brief at 59.

As for Appellant's claim that he did not receive sufficient notice of the expert testimony, it is meritless. The trial court explained:

> Prior to the forensic scientist's testimony, [Appellant] objected on the grounds that he had been given insufficient notice that she (as opposed to a general lab technician) was going to testify, and he had therefore not secured his own DNA expert. N.T., 8/7/14, [at] 6. The Commonwealth refuted [Appellant]'s claim, representing that it had passed the report to [Appellant] months prior and that the report indicated that the DNA analysis was performed by a forensic scientist, not a technician. *Id.* at 7-8. The court accepted

> the Commonwealth's representation that it had given ample notice – and [Appellant] did not argue that he had *not* timely received the report – and permitted the testimony.

Trial Court Opinion, 8/8/17, at 14 (emphasis in original). Based on the record before us and the trial court's explanation of this issue, and because evidentiary determinations are left to the sound discretion of the trial court, we see no basis upon which to disrupt the court's ruling. **See Hicks**, 151 A.3d at 224.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/24/18